# EXHIBIT A

**Query**    **Reports**    **Utilities**    **Help**    **Log Out**

# U.S. District Court
## Eastern District of Missouri (St. Louis)
### CIVIL DOCKET FOR CASE #: 4:20-cv-01565-SRC

| | |
|---|---|
| Ahern Rentals, Inc. v. EquipmentShare.com Inc et al | Date Filed: 11/02/2020 |
| Assigned to: District Judge Stephen R. Clark | Jury Demand: Plaintiff |
| Cause: 18:1836(b) Civil Action to Protect Trade Secrets | Nature of Suit: 880 Defend Trade Secrets Act (of 2016) |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Ahern Rentals, Inc.**      represented by    **Joseph M. Wientge , Jr.**
LITTLER MENDELSON PC - St Louis
600 Washington Ave.
Suite 900
St. Louis, MO 63101
314-659-2017
Fax: 314-659-2099
Email: jwientge@littler.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lindsey Rendlen Latzke**
LITTLER MENDELSON PC - St Louis
600 Washington Ave.
Suite 900
St. Louis, MO 63101
314-919-6210
Email: llatzke@littler.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EquipmentShare.com Inc**

**Defendant**

**EZ Equipment Zone LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/02/2020 | 1 | COMPLAINT against defendant EZ Equipment Zone LLC, EquipmentShare.com Inc Jury Demand,, filed by Ahern Rentals, Inc.. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Civil Cover Sheet, # 10 Original Filing Form, # 11 Summons to EquipmentShare.com Inc, # 12 Summons to EZ Equipment Zone LLC)(Wientge, Joseph) (Entered: 11/02/2020) |
| 11/02/2020 | 2 | NOTICE OF PROCESS SERVER by Plaintiff Ahern Rentals, Inc. Process Server: St Louis |

| | | Investigations & Process Service (Wientge, Joseph) (Entered: 11/02/2020) |
|---|---|---|
| 11/02/2020 | 3 | NOTICE OF PROCESS SERVER by Plaintiff Ahern Rentals, Inc. Process Server: St Louis Investigations & Process Service (Wientge, Joseph) (Entered: 11/02/2020) |
| 11/02/2020 | 4 | ENTRY of Appearance by Joseph M. Wientge, Jr for Plaintiff Ahern Rentals, Inc.. (Wientge, Joseph) (Entered: 11/02/2020) |
| 11/02/2020 | 5 | DISCLOSURE OF ORGANIZATIONAL INTERESTS CERTIFICATE by Plaintiff Ahern Rentals, Inc.. Parent companies: None, Subsidiaries: None, Publicly held company: None,. (Wientge, Joseph) (Entered: 11/02/2020) |
| 11/02/2020 | 6 | ENTRY of Appearance by Lindsey Rendlen Latzke for Plaintiff Ahern Rentals, Inc.. (Latzke, Lindsey) (Entered: 11/02/2020) |
| 11/02/2020 | | Case Opening Notification: 2 Summons(es) issued. The summons were emailed to attorney Joseph M. Wientge, Jr.. All non-governmental organizational parties (corporations, limited liability companies, limited liability partnerships) must file Disclosure of Organizational Interests Certificate (moed-0001.pdf). Judge Assigned: U.S. District Judge Stephen R. Clark. (BAK) (Entered: 11/02/2020) |
| 11/02/2020 | | Judge Clark enters a Standing Order in all of his cases as follows: See Order for details https://www.moed.uscourts.gov/judge/stephen-r-clark (CBL) (Entered: 11/03/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/10/2020 14:53:28 | | |
| **PACER Login:** | bakersfo | **Client Code:** | 10082085-50733585 |
| **Description:** | Docket Report | **Search Criteria:** | 4:20-cv-01565-SRC |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **AHERN RENTALS, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  4:20-cv-1565 |
| vs. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **EQUIPMENTSHARE.COM INC, and** | ) | |
| **EZ EQUIPMENT ZONE LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Ahern Rentals, Inc. ("Plaintiff" or "Ahern"), by and through its undersigned attorneys, and for its causes of action against Defendant EquipmentShare.com, Inc. ("EquipmentShare" or "Defendant EquipmentShare") and Defendant EZ Equipment Zone LLC ("EZ" or "Defendant EZ," collectively "Defendants") alleges and states as follows:

## INTRODUCTION

1.      This action concerns EquipmentShare's systematic and concerted collaboration with EZ to take advantage of EquipmentShare's improper solicitation of Ahern's employees and customers and the theft of confidential and proprietary trade secrets and other confidential information belonging to Ahern.  Specifically, EquipmentShare has raided Ahern's talented employees and confidential, proprietary, and/or trade secret information in an effort to grow its business, at Ahern's expense, and now, upon information and belief, has conspired with EZ by providing it with these stolen resources to grow EZ's business as well.

2.      Plaintiff Ahern is North America's largest independently-owned equipment rental company with locations nationwide and over a 60-year history of experience in the equipment rental industry.  In addition to equipment rentals, ranging from heavy equipment to hand tools and

high reach equipment, Ahern offers sales of new and used equipment, plus servicing. Ahern earned its success by cultivating long-term relationships with customers and heavily investing in its employees through training and development programs.

3. Defendant EquipmentShare is a newcomer to the industry, relative to the long-standing experience of Ahern. EquipmentShare has sought to dramatically increase its market share in the industry at Ahern's expense, in only a matter of a few years, by exploiting Ahern's hard work, expertise, and experience by engaging in a highly-organized conspiracy to steal these assets.

4. In early to mid-2017, EquipmentShare began its attack on Ahern by targeting Ahern's employees, and directing outgoing Ahern employees to steal Ahern's confidential, proprietary, and/or trade secret information immediately before they left Ahern to begin working for EquipmentShare. In some instances, outgoing Ahern employees intentionally damaged Ahern's relationship with customers – which Ahern built over decades – while still on Ahern's payroll. EquipmentShare, along with former Ahern employees, conspired against Ahern to misappropriate Ahern's confidential, proprietary, and/or trade secret information. EquipmentShare was able to effectively steal significant portions of Ahern's business in markets nationwide by soliciting Ahern employees and obtaining and subsequently exploiting Ahern's confidential, proprietary, and/or trade secret information.

5. In response to EquipmentShare's improper attacks, Ahern has filed a number of lawsuits against EquipmentShare and Ahern's former employees, who have breached the former employees' covenants with Ahern. Some of these cases have been consolidated as Multidistrict Litigation before the Honorable Judge Phillips in the Western District of Missouri of the United States District Court. *See In Re Ahern Rentals, Inc., Trade Secret Litigation*, Case No. 20-02945-

MD-C-BP (hereinafter "MDL").[1]  In addition, Ahern has filed lawsuits against EquipmentShare and Ahern's former employees in several state court actions, which are not a part of the MDL.[2]

6.      The RICO action consolidated under the MDL, as identified in Exhibit 1, targets EquipmentShare's nationwide conspiracy and other tortious misconduct.  The employment actions, the remaining lawsuits identified in Exhibit 1, concern contract and tort-based claims against one or more former Ahern employees, in addition to related claims against EquipmentShare.  The defendants in these employment actions used Ahern's contractually protected information, which they discerned solely from and during their employment with Ahern, to steal customers and artificially build market share for EquipmentShare, while damaging Ahern. Each action filed by Ahern against EquipmentShare seeks to protect Ahern from EquipmentShare's conspiracy and seeks to prevent EquipmentShare and former employees from continuing their illicit scheme.

7.      Upon information and belief, after Ahern acted to hold EquipmentShare and Ahern's former employees accountable for their improper conduct, EquipmentShare partnered with EZ in order for EquipmentShare to continue its efforts to improperly steal Ahern's share of the equipment rental market.

8.      As stated on its website, "Equipment Zone, LLC was formed to assist owners of rental equipment and assets to maximize their potential rental prospects through a managed cooperative type rental platform."  *See Business Overview*, Ezequipmentzone.com, https://ezequipmentzone.com (last visited Sept. 20, 2020).

---

[1] The cases consolidated in the MDL are identified in Exhibit 1.
[2] The state court actions not a part of the MDL are identified in Exhibit 2.

9. Upon information and belief, EquipmentShare provided the illegally-obtained confidential, proprietary, and/or trade secret information from Ahern to EZ to achieve, by indirect means, the very same illegal and illicit goals for which Ahern has sued EquipmentShare directly in the MDL and other state-court actions.

## PARTIES, JURISDICTION, AND VENUE

10. Ahern's principal place of business is in Las Vegas, Nevada, and is duly formed and existing under the laws of the State of Nevada.

11. Upon information and belief, Defendant EquipmentShare is a Delaware corporation, with its principal place of business in Missouri.

12. Upon information and belief, Defendant EZ is a Missouri limited liability company with its principal place of business in Missouri. The citizenship of the members who comprise EZ are unknown but are believed to be residents of Missouri.

13. The causes of action in this Complaint arise under trade secret laws of the United States, as well as the misappropriation of trade secrets and computer data tampering laws of the State of Missouri and tort common laws of the State of Missouri.

14. This Court has federal question jurisdiction over the causes of action arising under the laws of the United States pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over the remaining causes of action pursuant to 28 U.S.C. § 1367.

15. This Court further has diversity jurisdiction over all causes of action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states[3] and the amount in controversy exceeds $75,000.00.

---

[3] Upon information and belief, Defendant EZ is a citizen of the State of Missouri. However, in the context of diversity jurisdiction, a limited liability company's citizenship is determined by the citizenship of its members. *See Lee v. Airgas - Mid S., Inc.*, 793 F.3d 894, 897 (8th Cir. 2015) ("[A]n LLC's citizenship is that of its members for diversity

16.     This Court has general personal jurisdiction over Defendant EquipmentShare because it is a citizen of Missouri since its principal place of business lies in Missouri.  Defendant EZ is subject to general personal jurisdiction in this Court because it is a citizen of Missouri, formed under the laws of the State of Missouri and with its principal place of business in Missouri.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because Defendant EZ is a resident of the State of Missouri and transacts its affairs within this judicial district.  Defendant EquipmentShare is also a resident of the State of Missouri and, upon information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A.     Ahern's Protection of its Confidential/Proprietary Information

18.     Ahern operates in the highly-competitive, multibillion-dollar equipment rental industry.  Due to the industry's evolution and like many other leaders in the equipment rental industry, Ahern recently began requiring employees to sign non-disclosure, non-solicitation, and non-competition agreements as a condition of employment.

19.     When employees begin with Ahern, they are required to execute various new hire forms, including a document entitled "Receipt of Employee Handbook and Acknowledgement of At-Will Employment."

20.     The Employee Handbook requires employees to safeguard confidential information and refrain from using confidential information outside the scope of their employment (the "Confidentiality Provision").  The Confidentiality Provision provides, "[e]ach employee is

---

jurisdiction purposes.").  The citizenship of EZ's members is not publicly available and is currently unknown.  Upon information and belief, Dwight McMinn, who is identified as the organizer of the entity but also believed to be a member, is a citizen of Missouri.

responsible for safeguarding and avoiding the use of confidential information obtained during employment with the Company [Ahern] and thereafter in perpetuity. All employees, including past, present, and future, have the responsibility to prevent revealing, divulging and/or using any such information unless it is necessary to perform expressed job duties."

21.     The Confidentiality Provision defines "confidential information" as "confidential techniques, business strategies and plans, methods, processes, formulae, compositions, systems, inventions, machines, computer programs, research projects, actual and prospective customer lists, addresses and personal information, vendor lists, pricing data including rate structures, sales information, sources of supply, financial data and marketing, production or merchandising systems or plans, training materials and information, and Company procedures and policies."

22.     Pursuant to the Confidentiality Provision, an Ahern employee's "duty to safeguard the confidential information shall exceed [the employee's] period of employment in perpetuity."

23.     The Confidentiality Provision restricts access to confidential information. The Confidentiality Provision provides, "[c]onfidential information is maintained on a need-to-know basis and must be authorized by your manager before you are permitted access."

24.     Ahern also required incoming employees to sign a "Disclosure and Indemnification Agreement" that, among other things, precluded those employees from disclosing to Ahern trade secrets, confidential information, or proprietary information of the employee's prior employer.

25.     Ahern employees are required to execute a "Confidentiality and Invention Assignment Agreement" (the "Confidentiality Agreement"). The Confidentiality Agreement broadly defines "Confidential Information" to include Ahern's "trade secrets, customer lists, customer purchasing histories and plans, costs, budgets, policies, procedures, processes, methods of operations, pricing, marketing plans, financial information, personnel information,

compensation programs, vendor sources, vendor identities and capabilities, research, machine and component histories, engineering data, designs and drawings, design standards, formulas, computer software and programs, Inventions . . ., and other data as well as information which Company receives from a third party and holds in confidence."  By executing the Confidentiality Agreement, Ahern employees agree that "I shall not at any time during my employment with Company or at any time thereafter, directly or indirectly disclose to any person or entity or use any Confidential Information except in the normal course of my duties as an employee of Company," among other terms.

26.     The Confidentiality Agreement also contains a remedies provision, which states in relevant part:

> Irreparable damage shall result to Company in the event of the breach by me of this Agreement.  In the event of a breach or threatened breach by me, Company shall be entitled to all remedies, including money damages, as well as injunctive relief and such other equitable relief to prevent or restrain any breach or threatened breach of this Agreement.  Each remedy of Company shall be cumulative and not in limitation of any injunctive relief or other rights or remedies which Company is or may be entitled at law or in equity.  Company shall be entitled to its reasonable attorney's fees, expert witness fees, and other expenses and costs it incurs in enforcing this Agreement or pursuing damages for my breach of this agreement.

27.     Ahern also utilizes a "Blogging and Social Network Policy" which concerns communications about Ahern's business outside of Ahern's internal network.  It prohibits the dissemination of certain information outside of the company.  Among other things, the Blogging and Social Network Policy provides that employees "must not breach the law, violate individual rights, or disclose or otherwise publish trade secrets, proprietary information, or confidential material.  Nor shall they breach or infringe upon Ahern's trademarks, copyrights, or other intellectual property, defame or in any way harm or negatively affect Ahern, its affiliates, related

entities, their respective employees (current or former), suppliers, vendors, advisors, customers and/or anyone associated with and/or otherwise doing business with Ahern."

28.    All Ahern employees are required to acknowledge and agree to a Security Access User Responsibility Acknowledgement and Agreement (the "Security Access Agreement").  The Security Access Agreement provides that employees who are entrusted with certain passwords and security access codes used to access, view, and/or transfer confidential information "may not, and will not, use such Security Access or Information for any purpose outside of performing your bona fide job duties," among other prohibitions.

29.    Ahern employees are required to acknowledge and agree to the terms of an Email/ Systems Misuse Agreement (the "Email Misuse Agreement").  The Email Misuse Agreement allows Ahern to protect its confidential information by limiting use of Ahern's email systems to Ahern business only, among other things.  By executing the Email Misuse Agreement, Ahern employees agree to the following, among other things:  "You may be given internet and e-mail access to assist you in the completion of your job duties.  Keep in mind that these systems are business tools and you are expected to use them for legitimate business purposes for the benefit of the Company. . . . Company equipment (including computers equipped for internet access), e-mail and voicemail systems are to be used for Company business only."

30.    Ahern employees execute a "Code of Conduct."  Among many other things, the Code of Conduct states that "theft, destruction, damage, or unauthorized removal or use of Company property or materials, including documents, records, data, computer programs, training materials and other proprietary information and materials" is prohibited and is grounds for discipline including immediate termination.

31.     The Code of Conduct also prohibits (and subjects employees to discipline for) the failure or refusal to follow general policies, rules and regulations of the Company and disclosing or discussing company or customer confidential matters to outsiders.

32.     Depending on their start date with the company, not necessarily every Ahern employee signed each of the foregoing documents (the Receipt of Employee Handbook and Acknowledgement of At-Will Employment, the Confidentiality Agreement, the Blogging and Social Network Policy, the Security Access Agreement, the Email Misuse Agreement, and the Code of Conduct). Most employees, however, signed nearly all or all of the foregoing agreements.

33.     Ahern employees have varying levels of access to a computerized system referred to as "AS400", also known as "RentalMan." The AS400 system, which is housed on servers in Nevada, includes a system where certain employees clock in and out, and holds customer lists and related rental/purchase data, employee data (including salary information), and pricing information, among other things.

**B.      EquipmentShare's Recent Business History**

34.     Upon information and belief, EquipmentShare was formed in November 2014 by brothers Willy and Jabbok Schlacks. EquipmentShare's business model, upon information and belief, initially concerned the use of the so-called ES Track telematics system (hereinafter "ES Track") to track construction fleets and to gather information about the location and status of equipment in real time. Further, upon information and belief, EquipmentShare would use the telematics system to track and share equipment and become (as reported by certain media outlets) the "Airbnb of construction."

35.     Upon information and belief, despite an influx of capital from various sources, as reported in the media, EquipmentShare's initial business model was unsuccessful. Accordingly,

9

EquipmentShare apparently decided to refocus its business on regional brick-and-mortar equipment rental locations sometime in 2016 or 2017.

36.    Additionally, upon information and belief, EquipmentShare was and remains under pressure from its investors and/or lenders to rapidly grow and generate revenues and profits and become economically sustainable before EquipmentShare's seed money is depleted.

37.    As described more fully below, rather than build its operations organically, EquipmentShare engaged in a concerted plan to build brick-and-mortar locations through tortious actions targeting Ahern and its employees, who possess decades of combined experience in the marketplace.  EquipmentShare has grown from zero physical locations to 35 or more physical locations in under five years and now claims to have 1,300-plus employees.

38.    Upon information and belief, EquipmentShare apparently intends to continue opening physical locations in the future.

## C.    EquipmentShare's Conspiracy to Destroy Ahern

39.    While Ahern was unaware of it at the time, sometime in or around early- to mid-2017, EquipmentShare began a concerted enterprise designed to destroy Ahern and to capture market share by systematically looting Ahern's employees and Ahern's confidential, proprietary, and/or trade secret information.

40.    Specifically, EquipmentShare engaged in a concerted campaign of false representations regarding Ahern and the state of its business.  In conjunction with this false campaign, EquipmentShare offered to pay Ahern employees more in salary than they earned with Ahern, in some instances, dramatically more than market/industry standards, which artificially inflates expenses in the industry.

41.     EquipmentShare did not merely lure Ahern's employees away using the foregoing tactics.  Upon information and belief, EquipmentShare directed outgoing Ahern employees to steal Ahern's confidential, proprietary, and/or trade secret information immediately before they left Ahern to begin working for EquipmentShare.  Ahern subsequently learned that, in numerous instances, immediately before leaving Ahern and joining EquipmentShare, employees secretly and improperly emailed to themselves copies of customer lists, equipment rental rates, master key account information, account information, customer price sheets and other pricing information, customer credit applications, national account information, and central regional account information, among other things, which were all confidential.

42.     In at least one instance, an Ahern employee, immediately before leaving Ahern and joining EquipmentShare, took steps to actively sabotage Ahern's business with its customers through lies and deception.

43.     EquipmentShare targeted a large number of Ahern sales representatives as part of its conspiracy, and did so at least in part because, unlike common industry practice, Ahern's sales representatives are account based, meaning they are tied to clients.  Sales representatives are not tied to geographic regions or territories.  As a result, EquipmentShare's poaching of Ahern's sales representatives has effectively caused large numbers of Ahern clients to follow their sales representative contacts to EquipmentShare.

44.     Ahern employees who left for EquipmentShare caused Ahern customers to leave Ahern for EquipmentShare.  Ahern's loss of customers and customer relationships built over decades has cost Ahern tens of millions of dollars in lost revenues.

45.     Because Ahern is private and family-owned, EquipmentShare's noncompetitive behavior is particularly damaging.  Unlike other competitors in the industry, Ahern cannot raise

capital through public markets. Accordingly, EquipmentShare's noncompetitive behavior as described herein, which is intended to reduce Ahern's revenues while increasing its expenses, reflects a plan to destroy Ahern.

46. Ahern instituted civil actions against numerous former employees, as well as EquipmentShare, in various jurisdictions throughout the country, for the express purpose of preventing EquipmentShare or Ahern's former employees from continuing their illicit conspiracy.

47. To date, Ahern believes in excess of 100 (and perhaps more than 250 or 300) of its approximately 3,000 employees left to become employees of EquipmentShare as a result of EquipmentShare's conspiracy and scheme.

48. While it is unknown exactly when EquipmentShare became knowledgeable of the agreements executed between Ahern and its employees, it is clear that EquipmentShare knew about the agreements, but continued its conspiracy against Ahern despite that knowledge. On January 17, 2019, counsel for Ahern sent letters to Jabbok Schlacks, EquipmentShare's Chief Executive Officer, as well as numerous former Ahern employees. In the letter to Schlacks, counsel for Ahern described EquipmentShare's unfair competition, mass departures of employees and customers from Ahern to EquipmentShare, and the resulting breaches of the employees' respective employment agreements with Ahern. Ahern demanded that EquipmentShare take immediate measures to prevent former Ahern employees, or those at EquipmentShare's direction, from continuing these unlawful activities.

49. EquipmentShare, nonetheless, continued to encourage, demand, or require former Ahern employees to violate their agreements with Ahern through the pattern and practice of misconduct described herein.

**D.      Examples of EquipmentShare's Misconduct throughout the Country**

50.      Upon information and belief, EquipmentShare took Ahern's confidential, proprietary, and/or trade secret information by influencing a number of employees to take such information prior to, and in some cases after, ending employment with Ahern.  These acts clearly violated the employees' agreements with Ahern and were done without authorization by Ahern.  Furthermore, there can be no reasonable grounds for the employees to believe they had such authorization to access and distribute Ahern's confidential, proprietary, and/or trade secret information.

**I.      EquipmentShare's Misconduct in Texas**

51.      For example, Keith Menges worked for Ahern for approximately five years in San Antonio, Texas until he suddenly resigned from Ahern on December 28, 2017.  EquipmentShare then began employing Menges.  At various points during his employment at Ahern, Menges executed the Receipt of Employee Handbook and Acknowledgement of At-Will Employment, the Email Misuse Agreement, the Code of Conduct, the Blogging and Social Network Policy, and the Security Access Agreement.  Before Menges began working for EquipmentShare, Menges emailed Ahern's confidential master key account information from his Ahern email address to his personal email address on at least three occasions.  On December 20, 2017, one week before Menges resigned, he sent the master key account information to his personal email address a final time.

52.      The master key account information contains confidential, proprietary, and/or trade secret information about Ahern's customers that gives Ahern a competitive advantage, including names of the key decision-makers working for customers, what customers may be interested in buying, customers' future plans, and personal information about the decision-makers at or owners of customers such as the names of their children, wives, or key subordinates.  The master key

13

account information also reveals how much revenue is generated from each customer over intervals of 90, 180, and 270 days as well as the revenue generated from the customer the prior year.

53. Upon information and belief, despite Ahern's demand that EquipmentShare and Menges cease and desist use of Ahern's confidential, proprietary, and/or trade secret information, both EquipmentShare and Menges continue to do so.

54. In addition to Menges, EquipmentShare hired at least nine Ahern employees from its San Antonio, Texas location, including multiple branch managers, sales representatives, and other employees. A former Ahern branch manager who left for EquipmentShare made numerous false representations about Ahern to Ahern employees, including that Ahern was selling its business to another rental company, among other misconduct.

55. As another example, in February 2017, Ahern hired Chad Haag as a sales representative at its McKinney, Texas branch. Upon starting employment at Ahern, Haag executed the Receipt of Employee Handbook and Acknowledgement of At-Will Employment, the Security Access Agreement, the Email Misuse Agreement, the Code of Conduct, the Blogging and Social Network Policy, and the Confidentiality Agreement, among other things.

56. Ahern employed Haag until Haag resigned in late 2017, when he went to work for EquipmentShare. Before Haag resigned from Ahern and began working for EquipmentShare, Haag emailed Ahern's confidential information from his Ahern email address to his personal email address. Haag emailed Ahern's confidential information to his personal email address on at least seven occasions. On August 23, 2017, Haag emailed the master national customer list and central regional account list to his personal email account. Ahern's account lists contain information on individual customers, their addresses, and the revenue generated by each customer over the past

several years. On September 3, 2017, Haag emailed additional customer information, including contact information, to his personal email account. While Ahern employed Haag, Haag also secretly sent Ahern's confidential price sheets for at least fifteen customers, customer credit applications, and internal forms to his personal account.

57.    Upon information and belief, despite Ahern's demand that EquipmentShare and Haag cease and desist, EquipmentShare and Haag continue to use Ahern's confidential, proprietary, and/or trade secret information.

58.    In addition to Haag, EquipmentShare hired at least four additional Ahern employees from Ahern's McKinney, Texas location, including two additional sales representatives.

59.    EquipmentShare's misconduct and conspiracy played out repeatedly in Texas. For example, in Corpus Christi, Texas, EquipmentShare hired from Ahern:  a branch manager, a sales/branch manager, multiple sales representatives, and multiple mechanics, among others. Former branch manager Dale Lawrence stated that he was going to "crush" Ahern's local branch.

60.    In September 2018, Lawrence, while he was still the branch manager for Ahern's Corpus Christi location, approached at least two Ahern employees, including a counter dispatcher, to inquire if they would leave Ahern to work for EquipmentShare. Lawrence asked the Ahern employees to stay with Ahern while he set up EquipmentShare's new location and took all of Ahern's customers, after which Lawrence stated that he would hire them to work for EquipmentShare. Lawrence used knowledge about Ahern's employees' pay to offer positions at a higher rate of pay with EquipmentShare to induce the employees to leave Ahern.

61.    On another occasion, former Ahern employee Seth Taylor texted the Ahern dispatcher asking for the phone number of an Ahern customer that he had not serviced while at

15

Ahern.  Ahern also learned that Taylor had linked his cell phone to his personal iPad so that he could access the Ahern AS400 system after he left Ahern.  Taylor also told another Ahern employee he used a chip to download all the data from his Ahern work cellphone, including customer names, contact information, and pricing information, and stated he would take all of the customers with him to EquipmentShare, causing Ahern to "shut down."

62.     In Houston, Texas, EquipmentShare hired at least 14 different Ahern employees, including sales managers, sales representatives, mechanics, and operations/service employees, among others.  EquipmentShare's employees told Ahern employees that another rental company was going to buy EquipmentShare out and that EquipmentShare knew Ahern's pay scales.  Customers reported to Ahern that EquipmentShare's goal was to drive rates down and force Ahern out of the Houston market.

63.     In Austin, Texas, EquipmentShare solicited at least 10 Ahern employees and hired at least nine former Ahern employees.  This includes multiple sales representatives and a branch manager, among others.

64.     In Irving, Texas, EquipmentShare hired at least 11 Ahern employees, including multiple branch managers, mechanics, and at least one sales representative.

**II.     EquipmentShare's Misconduct in California**

65.     Ahern employed Matthew Allen as a sales representative in Sacramento, California beginning in or about June 2002.  Upon starting employment at Ahern or thereafter, Allen executed an early version of the Email Misuse Agreement, the Receipt of Employee Handbook and Acknowledgement of At-Will Employment, and the Blogging and Social Network Policy, among other things.

66.     In June 2019, after Allen began working for EquipmentShare, he contacted at least one other Ahern employee, an outside sales representative, and made scurrilous allegations about the Ahern employee's commissions, alleging that Ahern was "screwing" the employee out of commissions with a specific customer.  These allegations were made in an attempt to lure the employee to come work for EquipmentShare.  Allen also referenced sensitive and proprietary internal practices of Ahern as he attempted to lure Ahern employees to EquipmentShare.  These practices included details of confidential compensation programs that Allen learned of during his time at Ahern.  Allen used the compensation program information of Ahern to lure Ahern's employees to EquipmentShare for more pay.

67.     Ahern employed Derrick Torres as a branch manager in Fremont, California.  Upon starting employment at Ahern or thereafter, Torres executed the Receipt of Employee Handbook and Acknowledgement of At-Will Employment, the Blogging and Social Network Policy, the Code of Conduct, the Email Misuse Agreement, and the Security Access Agreement, among other things.  Ahern employed Torres until he resigned on January 25, 2016, and began working for EquipmentShare.

68.     Not even one hour before he resigned, Torres sent Ahern's confidential, proprietary, and/or trade secret information from his Ahern email account to his personal email account.  This included a document detailing Ahern's branch manager functions and structure, duties and responsibilities, expectations, goals, organizational relationships, qualifications and demands, as well as compensation structure – essentially the roadmap of Ahern's branch operations.  Torres also misappropriated Ahern assets and violated company policies in the timeframe before his departure from Ahern, including writing contracts to himself as the customer

for free and heavily discounted use of Ahern equipment, apparently to gain favor with customers before his move to EquipmentShare.

69.    As employees of EquipmentShare, Torres and Allen targeted and continue to target Ahern employees by personally contacting Ahern employees and asking the employees to leave Ahern for EquipmentShare.  Upon information and belief, EquipmentShare, Torres, and Allen used and continue to use Ahern's confidential personnel information, which Torres and Allen learned while Ahern employed them, to target Ahern employees.

70.    Upon information and belief, despite Ahern's demand that EquipmentShare, Torres, and Allen cease and desist use of Ahern's confidential, proprietary, and/or trade secret information, they have failed to do so.

71.    EquipmentShare has, and continues to, solicit additional Ahern employees as EquipmentShare seeks to establish bases of operations in California.  EquipmentShare hired at least one sales representative from Ahern's Bakersfield, La Mirada, Sacramento, and Modesto branches, and hired other Ahern employees from its Bakersfield, Bloomington, Irwindale, Romoland, San Francisco, San Leandro, Santa Ana, and Ventura locations.

72.    EquipmentShare also solicited and attempted to recruit M. Elliot Vigil, Ahern's top grossing sales representative in Colorado, beginning in or around March or April 2019.  Jabbok Schlacks, on at least one occasion, directly solicited and recruited Vigil to EquipmentShare.

**III.    EquipmentShare's Misconduct in Utah**

73.    EquipmentShare improperly acquired confidential, proprietary, and trade secret information from Ahern's former employee in Utah, who secretly emailed Ahern's confidential information to her personal email address.

74.     On or about August 3, 2010, Ahern hired Michelle McCormac as a sales representative in Utah.  As a sales representative, McCormac was the face of Ahern to current and prospective Ahern customers.  Upon starting her employment at Ahern, McCormac acknowledged that she read, understood, and agreed to comply with the terms of the Employee Handbook, including the Confidentiality Provision.  In addition to agreeing to the Confidentiality Provision, at various dates McCormac also agreed to the Email Misuse Agreement, the Code of Conduct, and the Blogging and Social Network Policy.  Ahern employed McCormac for over nine years.  Throughout those nine years, McCormac could access confidential, proprietary, and/or trade secret information about Ahern's business, customers, employees, business plans and strategies, actual and prospective customer lists, vendor lists, and pricing and sales data, among other things.

75.     On September 27, 2019, McCormac resigned from her position at Ahern.  Before resigning, McCormac emailed Ahern's confidential, proprietary, and/or trade secret information from her Ahern email address to her personal email address.  On September 9, 2019, McCormac sent confidential equipment rental rates to her personal email address.  On September 23, 2019, McCormac emailed a confidential customer list – containing information on 3,000 Ahern customers – to her personal email address.  The customer list contained confidential information, such as the personal home addresses of decision-makers who worked for customers.  One day before resigning, McCormac emailed confidential equipment rental rates to her personal email address again.  McCormac also emailed a link to Ahern's sales representative compensation plan for 2019-2020 to herself, among other documents, before departing Ahern.

76.     Once McCormac resigned from Ahern, EquipmentShare began employing McCormac in a substantially similar position to the position that McCormac held at Ahern.

77.     Upon information and belief, EquipmentShare and McCormac used and continue to use Ahern's confidential equipment rental rates and customer list.  Upon information and belief, despite Ahern's demand that EquipmentShare and McCormac cease and desist use of Ahern's confidential, proprietary, and/or trade secret information, they have failed to do so.

### IV.     EquipmentShare's Misconduct in Arizona

78.     EquipmentShare's pattern and practice of improperly targeting Ahern employees through defamatory innuendo, increased compensation, theft of proprietary, confidential, and trade secret information by outgoing Ahern employees and exploitation of that information after the employees joined EquipmentShare, formation or growth of EquipmentShare's brick-and-mortar locations, often very near competing Ahern locations, and the resulting destruction of Ahern locations has repeated itself across the country.

79.     In places, EquipmentShare's conspiracy gutted particular Ahern locations of large numbers of individuals based on the same types of lies, distortions, uncompetitive behavior, and bad acts described above.

80.     For example, to establish a Phoenix, Arizona location, EquipmentShare hired a mechanic from Ahern's Phoenix location, a sales representative from Ahern's Phoenix location, and a sales manager from Ahern's Odessa, Texas location.  These three former employees then solicited at least nineteen additional Ahern employees for EquipmentShare's Phoenix branch, including multiple sales representatives, drivers, and mechanics.  EquipmentShare built its Phoenix location based largely with poached Ahern employees.

81.     Through the improper acts of a former Ahern mechanic, who became the General Manager of EquipmentShare's Phoenix location, EquipmentShare systematically raided Ahern's

employees and offered them higher compensation than the compensation they were earning at Ahern.

82.     Ahern hired Deral Bonner on or around October 16, 2016 as a Service Manager in Arizona.  As Service Manager, Bonner had access to the performance and compensation of everyone in the service department, including service technicians and mechanics.  In or around late September or early October of 2019, Bonner requested to move from the Service Manager position at Ahern to a Mechanic position.  As a result of this request, he relocated where he worked and had direct and consistent contact with Ahern's mechanics and service technicians throughout the day.

83.     Bonner received an offer to become General Manager of EquipmentShare in or around the first week of October 2019.  Bonner accepted this offer and started working at EquipmentShare on October 16, 2019.  Bonner became a General Manager for EquipmentShare and was responsible for opening the Phoenix branch.  Once Bonner moved to EquipmentShare and opened the Phoenix branch, he systematically raided Ahern's employees and offered them higher compensation, using his knowledge of Ahern's compensation structure.

84.     Under oath, Bonner admitted he targeted and hired from Ahern nineteen of the approximate twenty-five EquipmentShare employees at the Phoenix branch.  Bonner also admitted under oath he directly negotiated the pay of the mechanics he hired at EquipmentShare.  Barring one possible exception, Bonner stated under oath he hired each of these former Ahern employees at a higher salary than what he knew they were paid at Ahern.

85.     Further, EquipmentShare improperly acquired and used confidential, proprietary, and/or trade secret information from a former sales representative of Ahern in Phoenix, Arizona,

who secretly emailed such information belonging to Ahern to her personal email address, as well as targeted and acquired numerous Ahern customers.

86.     On or about March 1, 2018, Ahern hired Christina Gutierrez as a sales representative in Arizona.  Upon starting her employment at Ahern, Gutierrez entered into a Confidentiality and Invention Assignment Agreement with Ahern on February 19, 2018.  This Agreement included non-disclosure obligations.  Throughout her employment, Gutierrez could access confidential, proprietary, and/or trade secret information about Ahern's business, customers, employees, business plans and strategies, actual and prospective customer lists, vendor lists, and pricing and sales data, among other things.

87.     Gutierrez resigned her employment with Ahern on or about November 8, 2019, at which point she went to work for EquipmentShare in a substantially similar role.  Prior to her departure from Ahern, Gutierrez engaged in suspicious activity, such as sending a November 6, 2019 email communication to a client and copying her personal email account.  Gutierrez also printed multiple charts containing client payment and commission details in late October 2019.  Before returning her Ahern mobile phone, Gutierrez wiped the phone.

88.     By December 2019, Ahern had received calls from three clients who stated that Gutierrez had contacted them to solicit their business.  Under oath, Gutierrez admitted to contacting nearly all her Ahern customers and admitted to targeting and acquiring approximately fifteen of her twenty-seven current customers at EquipmentShare from Ahern.  Gutierrez also stated under oath she believed all the customers she took from Ahern with her to EquipmentShare were given reduced rates as compared to the rates these customers paid at Ahern.

89.     Upon information and belief, EquipmentShare and Gutierrez improperly used and continue to use Ahern's confidential equipment rental rates and customer list.  Upon information

and belief, despite Ahern's demand that EquipmentShare and Gutierrez cease and desist use of Ahern's confidential, proprietary, and/or trade secret information, they have failed to do so.

90.     EquipmentShare hired at least nine Ahern employees, including one or more branch manager, service manager, mechanic, at least four sales representatives, and a driver to build its Lake Charles, Louisiana branch.

### V.     Additional Examples of EquipmentShare's Misconduct

91.     Upon information and belief, EquipmentShare solicited confidential, proprietary, and/or trade secret information from Ahern's former employee in South Carolina who, while still employed by Ahern, secretly worked with EquipmentShare to open a competing location less than two miles from an existing Ahern location.  EquipmentShare's illicit and illegal acts in South Carolina provide yet another example of EquipmentShare's conspiracy against Ahern alleged herein.

92.     In Oklahoma City, Oklahoma, EquipmentShare's new branch was formed and developed based on EquipmentShare's hiring of at least seven Ahern employees, including its branch manager, sales manager, service manager, multiple sales representatives, and several other employees.  In one or more instance, the Ahern employees hired to work for EquipmentShare were told that Ahern's branch was going to close down and that Ahern was not making enough money.

93.     Ahern, as noted above, has its principle place of business and is headquartered in Las Vegas, Nevada.  EquipmentShare attempted to hire, or actually hired, Nevada-based employees of Ahern in multiple instances, from both its corporate office and its local branches.

94.     In a separate instance, EquipmentShare poached Ahern's consultant who was tasked with finding properties for Ahern pursuant to an exclusive consulting agreement.  Despite a contractual provision whereby the consultant agreed not to take on any business activities, paid

or unpaid, for a third party during the term of the contract without authorization from Don Ahern, upon information and belief, the consultant is now performing the exact same role for EquipmentShare. Ahern has sent letters to the consultant, and later to EquipmentShare, concerning the consultant's breach of the agreement and EquipmentShare's interference with the contract. Despite this, upon information and belief the consultant continues to perform work for EquipmentShare.

95. In addition to the instances described above, EquipmentShare also solicited and hired Ahern employees in Washington, Florida, Georgia, Kansas, Maryland, New York, North Carolina, and Oregon. In over two years, EquipmentShare created dozens of brick-and-mortar locations exploiting Ahern's decades of experience and institutional knowledge, all through the conspiracy described above.

**E.    EquipmentShare's Use of Missouri Residents to Further Conspiracy against Ahern**

96. Two former Ahern employees, Keith Wade and Jessie Wade who reside in Missouri, repeatedly solicited and attempted to lure Ahern's Chief Development Officer, Cory Rosencranse, to EquipmentShare in November and December of 2019.

97. Keith and Jessie Wade are husband and wife. Jessie Wade had been Ahern's Vice President of Finance until she took a similar role for EquipmentShare in or about June 2019. While still with Ahern, both Keith Wade and Jessie Wade executed Employment Agreements that contain non-solicitation and non-disparagement provisions. Pursuant to the non-solicitation provision, the Wades agreed not to solicit or attempt to hire Ahern employees, among other things. The obligations in the non-solicitation provision continue for two years following the end of employment with Ahern. The Wades' non-solicitation agreements will remain in effect through mid- to late-2021.

98.     On a November 5, 2019 call, Keith Wade contacted Rosencranse and asked how he was doing, if Rosencranse was happy at Ahern, and stated that he was not calling to solicit Rosencranse.   Wade then asked if Rosencranse signed the "Work Agreement" that Ahern introduced to employees in the summer of 2019.   The "Work Agreement" contained a noncompetition clause.  Rosencranse told Wade that he signed the "Work Agreement." The Wades informed Rosencranse that they relocated to Missouri, were working for EquipmentShare, and were very happy there.

99.     Subsequently, on November 27, 2019 at approximately 12:40 P.M., Rosencranse returned a call from Keith Wade.  During this call, Wade told Rosencranse that Jabbok Schlacks would love to meet with Rosencranse.  Wade then indicated that he heard that Ahern recently opened a data center, and that Don Ahern was actively looking to sell the company possibly due to complications with his health or for some type of end game.  Wade's actions, undertaken at the behest of EquipmentShare, blatantly violated the non-solicitation clause in the Employment Agreement he executed with Ahern.

100.    Rosencranse then asked Wade if Jabbok Schlacks was aware that Rosencranse had signed the "Work Agreement" with Ahern that contained a noncompetition provision.  Wade responded that Schlacks knew that Rosencranse had signed the non-competition agreement and they had a plan to work around it.  Wade stated that Schlacks would move Rosencranse to Australia, where he would spend one year in a role setting up rental store locations in Australia and possibly New Zealand.  Wade stated that it could be an adventure, and that after one year, Rosencranse could stay in Australia if he chose to or come back to the United States to continue working.

101.     During the same call, Wade stated there is not a "bright future" at Ahern and again claimed that Don Ahern was actively intending to sell the company.  Wade claimed that Jabbok Schlacks had confirmed with an independent third party that Don Ahern actively intended to sell the company.  Wade stated that this was not a surprise because Don Ahern's health was poor and that he has no succession plan.  Wade then stated that he was not sure if Ahern could pull off a sale because of Don Ahern's questionable decisions.

102.     On December 9, 2019, Rosencranse met with Jabbok Schlacks in Missouri as EquipmentShare continued to solicit Rosencranse, notwithstanding its knowledge of his non-competition agreement with Ahern.  Keith Wade set up this meeting and encouraged Rosencranse to attend it in violation of his non-solicitation agreement with Ahern.

103.     During the December 9, 2019 meeting, Rosencranse described the Work Agreement, including the non-competition provision, to Schlacks.  Schlacks opined that the noncompetition provision was unenforceable and that EquipmentShare would "go to the ends of the earth" to fight legal action taken to enforce it.  Schlacks stated that EquipmentShare would spend $10 to $15 million on legal fees to defend Rosencranse.  Schlacks compared the non-competition clause to slavery, stated that non-competition agreements were not enforceable unless a person was the "actual CEO", and stated that he might file a federal anti-trust lawsuit against the industry for using such provisions.

**F.     EquipmentShare Partnered with EZ to Continue Its Illegal and Illicit Activities**

104.     Upon information and belief, due to the numerous lawsuits filed by Ahern against EquipmentShare in order to stop EquipmentShare's illegal and illicit activities and the resulting harm to Ahern, EquipmentShare has contracted with EZ to use Ahern's confidential, proprietary, and/or trade secret information to continue the illegal attack upon Ahern's business.  Specifically,

Ahern is involved in no less than twenty-one federal and state lawsuits related to EquipmentShare's improper soliciting of Ahern's employees and customers and stealing of Ahern's confidential, proprietary, and/or trade secret information. *See* Exhibits 1, 2.

105. Upon information and belief, in an apparent attempt to realize its original goal of becoming the "Airbnb" of the equipment rental industry, EquipmentShare has sought out and conspired with EZ to use Ahern's confidential, proprietary, and/or trade secret information to continue the illegal attack upon Ahern.

106. As discussed above, EZ is a limited liability company that was formed under the laws of the State of Missouri. According to its Articles of Organization, Dwight McMinn organized the entity on April 5, 2018. EZ provides a managed cooperative type rental platform to assist owners of rental equipment to rent the equipment they own.

107. The software EZ uses to assist owners with renting their equipment is owned, operated, and managed by EquipmentShare.

108. Even a cursory review of EZ's website reveals a substantial relationship between EquipmentShare and EZ. For example, the "ES" logo is present throughout EZ's website. The "ES" logo appears on the "EZ Credit App[lication]," and appears prominently in a video embedded on the Frequently Asked Questions page of the Company's website. *See* Exhibit 4, EZ Equipment Finance Application; and Exhibit 5, FAQ, EZ Equipment Zone.

109. The aforementioned video appears underneath the heading of "How to Track Your Machine," and displays a web address to EquipmentShare's website. *See* Exhibit 5; *see also Frequently Asked Questions*, https://ezequipmentzone.com/faq (last visited Sept. 20, 2020) (depicting the ES Track application, with a web address of "EquipmentShare.com/track").

110. EquipmentShare's website also predominantly showcases the ES Track technology

for its customers to use.  *See* Exhibit 6.

111.    EZ's website boasts users of ES Track "will be able to see the location, daily usage, and the movements of each piece of equipment, along with other data about the equipment." Exhibit 6.  EquipmentShare's website also details ES Track's ability to locate equipment and drivers, provide usage reports, and monitor equipment attachments on the jobsite, among other equipment data metrics.  Exhibit 6.  In sum, both EquipmentShare and EZ utilize the same technology to perform the same work.

112.    In addition to EZ using ES Track to enable its equipment rental owners to track the usage and whereabouts of their equipment, the EZ website repeatedly refers to EZ's operations being facilitated by and through an agreement with a "national rental company."  *See* Exhibit 3, at 1-3, and Exhibit 5, at 1-2; *see also Business Overview, supra.*  Further, the Equipment Zone Asset Management Agreement provides that all rental equipment owners using the EZ platform must, in addition to using ES Track, use "ES Service."  Exhibit 3, at 3.  As stated in the Agreement, ES Service is the mechanism that EZ uses to maintain and service all equipment belonging to its rental owners.  *See id.*

113.    Both EquipmentShare and EZ's websites link to credit applications that not only look similar, but also feature a similar black and orange ES logo, further evidencing the link between the two companies.  *See* Exhibit 4 and Exhibit 7.

**G.    EquipmentShare and EZ's Exploitation of Ahern's Confidential/Proprietary Information**

114.    Upon information and belief, EZ is merely an extension of EquipmentShare's equipment rental operations. EquipmentShare is using EZ to attempt to achieve its goal of destroying Ahern, by using EZ to continue to exploit the confidential, proprietary, and/or trade secret information EquipmentShare improperly obtained from Ahern and avoid the multiple lawsuits Ahern has asserted against EquipmentShare to defend Ahern's trade secrets.

115.    Upon information and belief, based on EquipmentShare's improper conduct as described above, EZ is exploiting Ahern's customer lists, rental information, pricing information, and marketing strategies in its selection, placement, monitoring, and service of the equipment belonging to rental owners.

116.    The Asset Management Agreement, to which rental owners participating in EZ's rental cooperative must agree, states the "EZ [] Asset Management Marketplace (the 'Marketplace') is a rental platform that enables [would-be owners] to acquire equipment assets [and] monetize [their] equipment through [EZ's] rental agreements with a national equipment rental company with numerous rental locations." Exhibit 3, at 1. In addition, the Asset Management Agreement repeatedly refers to its "Master Rental Agreement" with a "national equipment rental company" or "a nationally recognized equipment rental company," which facilitates, enables, and ensures that rental owners' equipment will be rented in "various markets and physical rental locations." Exhibit 3, at 2-3; *see also* Exhibit 5, at 1 ("[EZ] has a Master Rental Agreement with a national equipment rental company enabling us to place [equipment at] all of our available rental locations."). The Marketplace lists and markets rental owners' equipment assets "to achieve the maximum prospective rental rates [and] as much utilization of the equipment as possible." Exhibit 3, at 2. Rental owners have no choice but to participate in the Marketplace

and "to be bound by the terms of [short-term] rental contracts" that result from EZ's partnership with a national equipment rental company. *Id* at 2-3; *see also* Exhibit 8, How the Process Works, at #7 (EZ "will add [rental owners'] equipment into [its] Master Rental Program and be <u>advertised</u> <u>as available for rent through [EZ's] strategic rental agreement with a national equipment rental</u> <u>company and placed into specific markets to maximize the rental rates</u>.") (Emphasis added).

117.    Upon information and belief, EZ is using the confidential, proprietary, and/or trade secret information EquipmentShare illegally obtained from Ahern to place rental owners' equipment.

118.    Rental owners participating in the EZ rental cooperative are required to use "[EquipmentShare] ES Track," the monthly cost of which "will be deducted from the gross rental proceeds" of rental owners' equipment.  Exhibit 3, at 3.  Likewise, rental owners engaged in the EZ rental cooperative must use "[EquipmentShare] ES Service" to service and maintain their equipment.  *Id.*

119.    Upon information and belief, EZ is using the confidential, proprietary, and/or trade secret information EquipmentShare illegally obtained from Ahern to monitor, service, and maintain rental owners' equipment.

120.    As described by FAQ #8 on EZ's website, rental owners participating in EZ's rental cooperative must "purchase [] equipment through [EZ and EquipmentShare's] strategic partnership."  Exhibit 5, at 2.  In other words, a would-be rental owner who desires to participate in EZ's rental cooperative cannot purchase his or her own rental equipment.  EZ's FAQs also state that it "will advise" would-be rental owners "on what equipment to purchase as we . . . know what equipment brings the best rental rates and has the most utilization for maximum profit."  *Id.* at 1.

EZ claims to have "a proven track record" of "good utilization rates" and "maximum rental rates." *Id.*

121.    Upon information and belief, EZ's selection of permissible rental equipment and its advice to would-be rental owners regarding the purchase of such equipment derives from the confidential, proprietary, and/or trade secret information EquipmentShare illegally obtained from Ahern.

122.    Upon information and belief, EZ also is relying on the confidential, proprietary, and/or trade secret information EquipmentShare illegally obtained from Ahern to develop profitable utilization and rental rates.  Given the nascent nature of EZ, Ahern is informed and believes that the "track record" and market information that EZ utilizes to guide would-be rental owners' purchase of such equipment is the confidential, proprietary, and/or trade secret information EquipmentShare illegally obtained from Ahern.

123.    Upon information and belief, EquipmentShare has provided the illegally-obtained confidential, proprietary, and/or trade secret information it stole from Ahern to EZ for the purpose of furthering the conspiracy to destroy Ahern's business.

124.    Upon information and belief, EZ has knowledge the confidential, proprietary, and/or trade secret information provided to it by EquipmentShare was illegally obtained by EquipmentShare from Ahern, yet EZ continues to benefit from such Ahern information.

125.    Upon information and belief, both EquipmentShare and EZ have specifically intended to utilize the confidential, proprietary, and/or trade secret information belonging to Ahern that was unlawfully obtained for the purpose of destroying Ahern and its business.

126.    Upon information and belief and with the opportunity to propound discovery, Ahern anticipates that EZ and EquipmentShare's exploitation of Ahern's confidential, proprietary, and/or trade secret information will further support Ahern's theories described in this Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### AGAINST ALL DEFENDANTS
### Conspiracy under the Computer Fraud and Abuse Act

127.    Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

128.    Upon information and belief, Defendants' conduct as alleged herein violates 18 U.S.C. § 1030(b) and 18 U.S.C. § 1030(a)(2).  Specifically, upon information and belief, Defendants EquipmentShare and EZ have agreed that one or both of them, or through third parties acting at their direction:  intentionally accessed Ahern's protected computer(s) without authorization or exceeding authorized access; thereby obtaining information from protected computers involved in interstate communication; which caused a loss to Ahern during a one-year period in excess of $5,000.

129.    Upon information and belief, EquipmentShare and EZ's conspiracy as alleged herein violates 18 U.S.C. § 1030(b) and 18 U.S.C. § 1030(a)(4).  Specifically, upon information and belief, Defendants EquipmentShare and EZ have agreed that one or both of themselves, or through third parties acting at their direction:  intentionally accessed a protected computer(s); did so without authorization or exceeding such authorization that was granted; did so knowingly and with intent to defraud; and thereby furthering the intended fraud and obtaining something of value, which caused a loss to Ahern during a one-year period in excess of $5,000.

130.    Upon information and belief, EquipmentShare and EZ's conspiracy as alleged herein violates 18 U.S.C. § 1030(a)(5).  Specifically, and as described in detail above, Defendants have agreed that one or both of themselves, or through third parties acting at their direction: knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct, intentionally cause damage without authorization, to a protected computer; intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly cause damage; and/or intentionally accessed a protected computer without authorization, and as a result of such conduct, cause damage and loss.

131.    Pursuant to 18 U.S.C. § 1030(g), Ahern seeks an award of damages in an amount to be determined at trial resulting from Defendant's violations of 18 U.S.C. § 1030, or any other relief the Court deems appropriate.

**COUNT II**
**AGAINST ALL DEFENDANTS**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836**

132.    Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

133.    Ahern owns, possesses, and developed over the years certain nonpublic, confidential and proprietary information, including business contacts, financial records, customer lists, business plans and practices, marketing plans and practices, and other information related to its customers.

134.    Ahern has made a reasonable effort and took reasonable steps to keep the information secret, including by:  maintaining the information on a secure server requiring a username and password, by having its employees sign agreements to maintain the confidentiality of the information, by maintaining policies and procedures to ensure the confidentiality of the

information, by taking steps to determine whether breaches of the information occurred and respond accordingly, and by taking legal action where necessary to protect the information.

135.    This confidential and proprietary information involves and relates to customers and involves and relates to services intended to be used in interstate commerce. Ahern's information constitutes trade secrets within the meaning of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1832, 1839.

136.    This information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

137.    In violation of Ahern's rights, Defendants have misappropriated and improperly disclosed the trade secret information by improper means, as alleged herein. Defendants' misappropriation of the trade secret information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

138.    As the direct and proximate result of Defendants' conduct, Ahern has suffered and will continue to suffer injury and significant damages in an amount to be proven at trial, and is entitled to statutory exemplary damages and recovery of its attorneys' fees and costs.

### COUNT III
### AGAINST ALL DEFENDANTS
**Violation of the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. § 417.450 *et seq.***

139.    Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

140.    Ahern's confidential and proprietary information, as described herein, derives substantial, independent economic value, actual or potential, from not being generally known to,

or ascertainable by proper means by, other persons who can obtain economic value from its disclosure, such as Ahern's competitors.

141.     Ahern has invested substantial time and resources and made reasonable efforts to maintain the secrecy of its confidential and proprietary information, including by requiring all employees who have access to such information to sign non-disclosure agreements, and by restricting access to such information.

142.     Ahern's confidential and proprietary information, as described herein, are trade secrets.

143.     Because of EquipmentShare's employees' former employment with Ahern, those employees had knowledge of and access to the confidential and proprietary trade secrets under circumstances giving rise to a duty to maintain their secrecy.

144.     EquipmentShare's employees have, without Ahern's express or implied consent, misappropriated Ahern's confidential and proprietary trade secrets.

145.     Upon information and belief, EquipmentShare directed Ahern's former employees who joined EquipmentShare to disclose Ahern's confidential and proprietary trade secrets without Ahern's express or implied consent.   These actions have been undertaken with reckless indifference to Ahern's rights.

146.     Upon information and belief, EquipmentShare has disclosed Ahern's confidential and proprietary trade secrets, without Ahern's expressed or implied consent, to EZ.  These actions have been undertaken with reckless indifference to Ahern's rights.

147.     Upon information and belief, EZ has acquired Ahern's confidential and proprietary trade secrets, which were obtained by improper means by EquipmentShare employees.

148.     Both EquipmentShare and EZ knew, or should have known, at the time they received Ahern's confidential and proprietary trade secrets that the trade secrets were improperly derived from or through Ahern's former employees, who owed a duty to Ahern to maintain the trade secrets' secrecy, yet nonetheless, utilized improper means to acquire the trade secrets.

149.     EquipmentShare and EZ's misappropriation and ongoing use of Ahern's confidential and proprietary trade secrets requires EquipmentShare and EZ return to Ahern all materials constituting, reflecting, or embodying such trade secrets.

150.     EquipmentShare and EZ's misappropriations and ongoing use of Ahern's confidential and proprietary trade secret information described herein is outrageous because of their evil motive and reckless indifference toward the rights of others, including Ahern.

151.     As a direct and proximate result of EquipmentShare and EZ's actions as described herein, Ahern has sustained and continues to suffer damage.

### COUNT IV
### AGAINST ALL DEFENDANTS
**Violation of Tampering with Computer Data and Equipment, MO. REV. STAT. § 537.525, Regarding Violation of MO. REV. STAT. § 569.095**

152.     Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

153.     Pursuant to MO. REV. STAT. § 537.525, Ahern has the right to bring a civil action against any and all persons who knowingly and without authorization, or without reasonable grounds to believe he or she has such authorization, tampers with computer data.

154.     Ahern's former employees, now employed by EquipmentShare, removed from Ahern's computer system confidential and proprietary trade secret information in violation of MO. REV. STAT. § 537.525.

155.     EquipmentShare knew Ahern's former employees knowingly and without authorization took data consisting of confidential and proprietary trade secrets belonging to Ahern and residing in Ahern's computer system, and unlawfully disclosed that information that was illegally obtained to EquipmentShare.

156.     Upon information and belief, Ahern's confidential and proprietary trade secrets were provided to EZ by EquipmentShare to further EquipmentShare's objective of destroying Ahern's business.

157.     EquipmentShare and EZ violated the statute when they knowingly and without authorization received, retained, and used confidential and proprietary trade secrets they knew were obtained unlawfully.

158.     As a consequence and proximate result of EquipmentShare and EZ's tampering with Ahern's computer system, Ahern has suffered and will continue to suffer pecuniary loss in the form of actual damages.

**COUNT V**
**AGAINST ALL DEFENDANTS**
**Civil Conspiracy**

159.     Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

160.     EquipmentShare and EZ conspired with one another to misappropriate and exploit Ahern's confidential and proprietary trade secrets and to compete unfairly against Ahern in violation of the law.

161.     EquipmentShare and EZ committed numerous overt acts in furtherance of the conspiracy including, but not limited to, inducing Ahern's employees to misappropriate Ahern's confidential and proprietary trade secrets before and after their employment with Ahern ended,

unlawfully obtaining Ahern's trade secret information from Ahern's former employees, using the trade secret information belonging to Ahern with the knowledge that it was obtained illegally, EquipmentShare providing Ahern's trade secret information that was unlawfully obtained to EZ, EZ using Ahern's trade secret information, and continuing the use of Ahern's trade secret information despite Ahern's demand for the return of such property.

162. Alternatively, even if the objectives of EquipmentShare and EZ's conspiracy were to accomplish a lawful purpose, they were in fact accomplished after a meeting of the minds, by unlawful means, including illegally obtaining and possessing Ahern's confidential and proprietary trade secrets.

163. EquipmentShare and EZ's conspiracy was willful and malicious and performed with an evil motive and reckless indifference to the rights of others, entitling Ahern to punitive damages.

164. As a direct result of the foregoing conduct undertaken by EquipmentShare and EZ, EquipmentShare and EZ have cause and continue to cause damages to Ahern. This includes Ahern's attorneys' fees and costs expended to enforce its legal rights.

## COUNT VI
## AGAINST ALL DEFENDANTS
### Unjust Enrichment

165. Ahern incorporates by reference the allegations contained in the above paragraphs 1 through 126 of this Complaint.

166. By virtue of the numerous unlawful acts committed by EquipmentShare and its employees, EquipmentShare conferred upon EZ substantial benefits including, but not limited to, misappropriating Ahern's confidential and proprietary trade secrets and unlawfully tampering with Ahern's computer data.

167. EquipmentShare and EZ enjoyed the benefits of the unlawful procurement and possession of Ahern's confidential and proprietary trade secrets without compensating Ahern for the value of the benefits conferred, even though such benefits were obtained, received, and enjoyed under inequitable and unjust circumstances.

168. Furthermore, EquipmentShare and EZ enjoyed the benefits of the unlawful procurement and possession of Ahern's confidential and proprietary trade secrets at the expense of Ahern, in that EquipmentShare and EZ's unlawful use of Ahern's trade secrets materially harmed and continues to harm Ahern's business.

169. Accordingly, it would be unjust to allow EquipmentShare and EZ to retain these benefits they unlawfully obtained and possess.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ahern Rentals, Inc. prays for judgment and relief against Defendants EquipmentShare.com Inc. and EZ Equipment Zone LLC as follows:

1. An award of compensatory, exemplary, and punitive damages in an amount to be proven at trial, including damages for the expense incurred completing a necessary investigation into Defendants' computer tampering;

2. Statutory double and treble damages, as applicable;

3. An award of attorneys' fees and costs incurred in the instant litigation;

4. An award of pre-judgment and post-judgment interest; and

5. For such other and further relief as the Court deems just and equitable.

Respectfully submitted,


/s/ Joseph M. Wientge, Jr.
Joseph M. Wientge, Jr., #57494MO
JWientge@littler.com
Lindsey Rendlen Latzke #64110MO
llatzke@littler.com
LITTLER MENDELSON, P.C.
600 Washington Avenue
Suite 900
St. Louis, MO  63101
Telephone: 314.659.2000
Facsimile: 314.659.2099

Attorney for Plaintiff Ahern Rentals, Inc.

4837-0517-8572.13 099283.1048

**Relevant Cases in MDL**

|  | **Title** | **Full Case Name** |
|---|---|---|
| 1 | RICO Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04143-BP<br>D. Nevada C.A. No. 2:19-02138 |
| 2 | Martinez Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc., Daniel Martinez, and Jane Doe Martinez<br>W.D. Missouri Case No. 2:20-cv-04140-BP<br>D. Arizona C.A. No. 2:20-00705 |
| 3 | Allen/Torres Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc., Matthew Allen, and Derrick Torres<br>W.D. Missouri Case No. 2:20-cv-04141-BP<br>E.D. California C.A. No. 2:19-01788 |
| 4 | Maestretti Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc. and Glen Maestretti<br>W.D. Missouri Case No. 2:20-cv-04142-BP<br>D. Colorado C.A. No. 1:20-00941 |
| 5 | Wade Action | Ahern Rentals, Inc. v. Keith Wade, Jessie Wade, and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04144-BP D. Nevada C.A. No. 2:20-00094 |
| 6 | Meadows Action | Ahern Rentals, Inc. v. William Meadows and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04145-BP<br>D. South Carolina C.A. No. 2:19-02823 |
| 7 | Donato Action | Ahern Rentals, Inc. v. Adam Donato and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04146-BP<br>D. South Carolina C.A. No. 2:20-01428 |
| 8 | Taylor/Lawrence Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc., Seth Taylor, and Dale Lawrence<br>W.D. Missouri Case No. 2:20-cv-04147-BP<br>S.D. Texas C.A. No. 2:20-00046 |
| 9 | McCormac Action | Ahern Rentals, Inc. v. Michelle McCormac and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04148-BP<br>D. Utah C.A. No. 2:19-01003 |
| 10 | Mendenhall Action | Ahern Rentals, Inc. v. Travis Mendenhall and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04149-BP<br>W.D. Washington C.A. No. 2:20-00542 |
| 11 | Mitchell Action | Ahern Rentals, Inc. v. Jay Mitchell and EquipmentShare.com Inc.<br>W.D. Missouri Case No. 2:20-cv-04157-BP<br>N.D. Texas C.A. No. 20-00106 |

**EXHIBIT 1**

**State Court Actions Not Consolidated under the MDL**

| | Title | Full Case Name |
|---|---|---|
| 1 | Gutierrez Action | Ahern Rentals, Inc., v. Christina Gutierrez and EquipmentShare.com Inc, Case No. CV-2020-04183, in the Maricopa County Superior Court, Arizona |
| 2 | Deherrera Action | Ahern Rentals, Inc., v. Aaron Deherrera, EquipmentShare.com Inc, and Does 1-25, Case No. 20-CV-11660, in the Superior Court of California, Amador County |
| 3 | Schatz Action | Ahern Rentals, Inc., v. Glen Schatz, EquipmentShare.com Inc, and Does 1-25, Case No. STK-CV-UBT-2020-3851, in the Superior Court of California, San Joaquin County |
| 4 | Helms Action | Ahern Rentals, Inc., v. Scott Helms and EquipmentShare.com Inc,, Case No. 2020-001800 "B", in the 14th Judicial District Court, Calcasieu Parish, Louisiana |
| 5 | Green Action | Ahern Rentals, Inc., v. Keith Green and EquipmentShare.com Inc,, Case No. 2020-001799 "D", in the 14th Judicial District Court, Calcasieu Parish, Louisiana |
| 6 | Haag Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc, Chad Haag, and Keith Menges, Case No. 199-03650-2019, in the 199th Judicial District Court, Collin County, Texas |
| 7 | Anderson Action | Ahern Rentals, Inc. v. Scott Anderson and Scott Trawick, Case No. D-1-GN-20-003342, in the 261st Judicial District Court, Travis County, Texas |
| 8 | Davis Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc, Kevin Davis, Christopher Holzhausen, Jared Dyer, and Emilio Valdez, Case No. 2020-28396, in the 157th Judicial District Court, Harris County, Texas |
| 9 | Pearson Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc and Justin Pearson, Case No. 2020-539671, in the 237th Judicial District Court, Lubbock County, Texas |
| 10 | Mosier Action | Ahern Rentals, Inc. v. EquipmentShare.com Inc, Keith Mosier, and Brad Hanna, Case No. CJ-2020-2177, in the District Court of Oklahoma County, Oklahoma |

**EXHIBIT**

**2**

# EZ EQUIPMENT ZONE, LLC
# ASSET MANAGEMENT AGREEMENT

Owner Name:                                Email:

Company:                                  Phone:

Billing Address:

The below agreement ("Agreement") between the equipment owner identified above (hereinafter referred to as "You" or "Owner") and EZ Equipment Zone, LLC ("Equipment Zone") sets forth the general terms and conditions governing your use of EZ Equipment Zone, LLC.'s Asset Management Services. Your use of EZ Equipment Zone, LLC.'s services, websites, tools, application (collectively referred to as "Services"), is subject to our Terms of Use and Privacy Policy, which are hereby incorporated into this Agreement in their entirety.

**Section 1: The Equipment Zone Asset Management Marketplace**

The EZ Equipment Zone, LLC. Asset Management Marketplace (the "Marketplace") is a rental platform that enables you to acquire equipment assets, monetize your equipment through our rental agreements with a national equipment rental company with numerous rental locations, by renting it out on short term rentals to contractors or other users of construction equipment, and be assured that your equipment is being rented, serviced, and maintained in a profitable manner. Here's how it works:

**Section 2: Setting up your Rental Business**

After signing one of EZ Equipment Zone LLC.'s Asset Management Agreements, EZ Equipment Zone, LLC. will guide you through the process if needed to set up your Business Name and register as a business, normally as a legally recognized LLC or corporation, in the event that you do not already have a legal entity to do business through. We suggest that you seek legal and or tax  advice from professionals in those fields if you have any questions concerning these areas. EZ Equipment Zone, LLC. will also assist you in obtaining the necessary insurance to cover the assets at our volume discounts with the proper coverages, along with other recommendations to successfully own and manage your rental fleet.

**Section 3: Purchasing your Equipment Assets**

EZ Equipment Zone, LLC. will guide and advise you during the process of purchasing equipment to place into the Rental Marketplace by using our experience as to what type of equipment to

EXHIBIT
3

purchase that has the best rental opportunities, along with purchasing Extended Warranties and/or accessories that enhance the rental prospects. As a large buyer of rental type equipment, EZ Equipment Zone, LLC. will use its buying power to assist you in getting the best value on the equipment purchased through our buying platform. We take the hassle out of acquiring various types of equipment.

## Section 4: Placing your Assets into the Equipment Zone Asset Management Rental Program

EZ Equipment Zone LLC. has a Master Rental Agreement with a national equipment rental company to place large amounts of equipment into their various markets and physical rental locations. We will list your assets through the national rental Marketplace and various websites, and work to achieve the maximum prospective rental rates, terms, and rental programs to ensure as much utilization of the equipment as possible.

## Section 5: Renter's Rights to Your Equipment While it is on Rent

By allowing EZ Equipment Zone, LLC. to list your equipment assets on the Marketplace, you agree to allow EZ Equipment Zone, LLC. through it's Master Rental Agreements with a nationally recognized equipment rental company to enter into rental contracts with prospective short term renters for the rental of your equipment and to be bound by the terms of such rental contracts. More specifically, in addition to any terms set forth in a rental contract between prospective renters of your equipment and our contracted national rental company, you are agreeing to waive your rights to possession and use of your equipment during the duration of any Rental Period set forth in such rental contracts and that you will not jeopardize or interfere with the rights of the renter to use and possess your equipment in accordance with the terms of such rental contracts. If the unexpected happens and you need to use your equipment while it is on rent, Equipment Zone will use its best efforts to arrange for the use of substitute rental equipment (at your expense) or, if the Renter consents, to switch out your equipment with comparable equipment.

## Section 6: Equipment Zone's Asset Management Rental Program CO-OP

EZ Equipment Zone, LLC.'s Asset Management Rental Program incorporates the use of placing all rental proceeds, expenses, tracking fees, management fees, etc for assets rented out monthly into a CO-OP type payment format. By averaging any and all rental proceeds received monthly, and averaging the maintenance charges and expenses incurred on the assets, each owner is assured of receiving their portion of the net rental proceeds in accordance with their individual percentage of the total sum of equipment managed by Equipment Zone.

## Section 7: Enrollment in ES Track and ES Service

EZ Equipment Zone, LLC. is committed to ensuring that all equipment rented out through the Marketplace and through the national equipment rental company is properly monitored and maintained for the benefit of both equipment owners and prospective renters of equipment.

Accordingly, we require all equipment listed for rent on the Marketplace to be connected to a telematics platform called ("ES Track") and enrolled in a maintenance program called ("ES Service"). This will give you and us the ability to track the location of your equipment, monitor daily usage data and insure that your equipment is being properly maintained and regularly inspected while it is on rent or available for rent through the Marketplace. ES Track is a monthly subscription service and will be deducted from the gross rental proceeds of each piece of equipment. All equipment rented out through the Marketplace and the national equipment rental company shall be serviced and maintained by ES Service and will be billed and deducted as incurred monthly from the gross rental proceeds of each piece of equipment. Equipment Zone through it's Management Agreement with each individual owner of assets, shall average all these tracking expenses and maintenance charges out and pro-rate the amounts to each individual asset owner on a monthly basis.

**Section 8: Insurance Requirements**

EZ Equipment Zone, LLC. through it's contract with the national equipment rental company requires all potential renters of equipment to carry comprehensive or commercial form general liability insurance and to name the national rental company as an additionally insured on their policy. Additionally these rental contracts require the renters to carry property insurance sufficient to cover the full replacement value of your equipment. The renters insurance requirements end upon the return of the equipment to the rental location. EZ Equipment Zone, LLC. requires each individual owner of assets to purchase a property insurance policy that will cover the full value of the equipment while it is off-rent and/or stored at a rental location. Equipment Zone will assist each owner in acquiring adequate insurance at a competitive rate through its existing insurance relationships currently in place, or the individual owner may use their own insurance company of choice.

**Section 9: Your Promises, Representations, and Warranties**

BY SIGNING THIS ASSET MANAGEMENT AGREEMENT WITH EZ EQUIPMENT ZONE, LLC, YOU REPRESENT AND WARRANT THAT:
1. You are the owner of the equipment and that there are no legal or other impediments restricting your rights to allow Equipment Zone, LLC to rent the equipment to prospective renters through the Marketplace and a national equipment rental company in accordance with the terms of this Agreement
2. You as the owner of equipment are agreeing to allow EZ Equipment Zone, LLC to manage the rental, maintenance, tracking, and collection and distribution of rental proceeds,  and to allow EZ Equipment Zone, LLC. to collect a ten percent management fee of the net rental proceeds prior to disbursement's to the owners.
3. You as the owner of equipment agree to purchase property insurance covering the full replacement value of each individual piece of equipment placed in the Rental Management Program

4. You as the owner of equipment agree to purchase extended warranty policies on each piece of equipment when such extended warranty policies are available to be purchased as recommended by EZ Equipment Zone, LLC.

5. You as the owner of equipment agree to allow EZ Equipment Zone, LLC. to average all owners rental proceeds and rental expenses into a CO-OP and be distributed monthly based upon each individual owners percentage of the total net proceeds being distributed.

6. You as the owner of equipment agree that EZ Equipment Zone, LLC. will be requiring each individual equipment owner to complete a W-9 if applicable, and provide a state sales tax number or waiver as applicable. EZ Equipment Zone, LLC. shall send annually to each equipment owner a Form 1099 rental income statement, along with a yearly expense form so that each individual owner may report their own income and expenses as required by law.

7. You as the owner of equipment agree that EZ Equipment Zone, LLC. has the right to determine what types and ages of equipment that may be allowed in the EZ Equipment Zone Asset Management Rental Program, or be advertised on the Marketplace, and to make a determination about any pieces of equipment that are underperforming or incurring excessive repair bills that do not meet the guidelines as required by EZ Equipment Zone, LLC.

8. You as the owner agree that in the event that EZ Equipment Zone, LLC. purchases any equipment on your behalf and re-sells it to you, that you understand that you are responsible for providing EZ Equipment Zone, LLC. with a Resale Number, or be subject to sales tax if applicable.

9. You as the owner of rental equipment agree and understand that you have the right to remove your assets from the EZ Equipment Zone Asset Management Rental Program at any time by submitting a removal request in writing with a 30 day notice given, and also understand that EZ Equipment Zone, LLC. has the right to rescind the Asset Management Rental Agreement by giving a 30 day written notice to any individual owner they choose to discontinue services for.

**Section 10: Entire Agreement and Modification**

This Agreement constitutes the entire agreement of the parties relating to the subject matter addressed in this Agreement. This Agreement supersedes all prior communications, contracts, or agreements between the parties with respect to the subject matter addressed in this Agreement, whether oral or written. Modifications or amendments to this Agreement shall be enforceable only if they are in writing and are signed by authorized representatives of both Parties.

**Section 11: Waiver and Severability**

EZ Equipment Zone, LLC.'s failure to enforce a provision of this Agreement is not a waiver of its right to do so later. If a provision of this Agreement is found to be unenforceable, the remaining provisions of this Agreement will remain in full force and effect.

**By signing below I acknowledge and affirm that I have fully read, fully understand, and agree to be bound by the terms and conditions contained in this Agreement, including the Terms of Use and Privacy Policy which are incorporated into this Agreement, that I am over 18 years of age and that I have the power and authority to enter into this Agreement.**

_____.  _____

Equipment Owner.                                                          Date


_____.  _____

EZ Equipment Zone, LLC.,  Representative.                         Date

I/We have applied to finance equipment. I authorize EZ Equipment Zone, LLC. or any other lending sources to investigate the references listed above or other credit data including reports from credit reporting agencies which may be required as part of its normal credit approval procedures and authorize that any such information requested may be released by telephone. NOTICE:EZ EquipmentZone, LLC  complies with Section 326 of the USA PATRIOT Act. This law mandates that we verify certain information about you while processing your lease application.

_____    _____   _____   Authorized this    Day

of    20   _____   Title _____

Signature

**EZ Equipment Zone, LLC.**
**Equipment Finance Application**
**RR 5 Box 100**
**Patton, MO 63662**
**www.ezequipmentzone.com**

## DESCRIPTION OF EQUIPMENT TO BE FINANCED

| Quantity | New/Used | Model - Description | Unit Cost | Total Cost |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

| | |
|---|---|
| **Total Cost** | |
| **Less Trade / Down payment** | (      ) |
| **Sales Tax (if applicable)** | |
| **TOTAL to Finance** | |

Term _____    Rate Program/Factor _____

Number of Advance Payment _____

Payment Amount   $_____

Tax Exempt:    Yes _____   No _____   *(If yes please provide copy of exemption certificate.   )*

Dealer _____   Salesperson _____   Phone _____

Street _____   City _____   State _____   Zip _____   Fax _____

**EXHIBIT**
**4**

**APPLICANT - DETACH AND RETAIN**

*Creditor's Name:* <u>EZ Equipment Zone, LLC</u> . *Creditor's Address:* <u>RR 5 Box 100 Patton, MO 636621</u>

If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact EZ Equipment Zone, LLCc or any other lending sources.
Creditor's Address: RR5 Box 100 Patton, MO 63662 or (573) 225-2412 within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request.

NOTICE: The Federal Equal Credit Opportunity Act prohibits creditors from discrimination against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Credit Protection Act (15 U.S.C. 1601 et seq.). The Federal agency that administers compliance with this law concerning this creditor is the Comptroller of the Currency, Customer Assistance Group, 1301 McKinney Street, Suite 3450, Houston, TX 77010-9050.

EZ Equipment Zone, LLC  Finance is the trade name for certain equipment leasing and finance business of EZ Equipment Zone, LLC. or any other lending sources.

**Rev 9/12**

**DESCRIPTION OF EQUIPMENT TO BE FINANCED**

| Quantity | New/Used | Model - Description | Unit Cost | Total Cost |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

|  |  |
|---|---|
| **Total Cost** | |
| **Less Trade / Down payment** | ( ) |
| **Sales Tax (if applicable)** | |
| **TOTAL to Finance** | |

Term _____  Rate Program/Factor _____

Number of Advance Payment _____

Payment Amount  $_____

Tax Exempt:    Yes _____ No _____ *(If yes please provide copy of exemption certificate.   )*

# EZ EQUIPMENT ZONE

HOME      HOW THE PROCESS WORKS      HOW TO GET STARTED      FAQ      CONTACT US

## Frequently Asked Questions

1. What if I don't have any experience with owning and managing an equipment rental business before?

ANSWER: That's okay, as we will guide you through the process of starting, owning, and operating your rental business. Our Asset Management Rental Program takes the most of the hassles out of the process for you.

2. How will I know what equipment to buy for rental?

ANSWER: We will advise you on what equipment to purchase as we have several years of experience in the purchase and management of rental equipment and know what equipment brings the best rental rates and has the most utilization for maximum profit.

3. What if my equipment doesn't rent out very much?

Answer: As there are no guarantees that any or all of the equipment listed in our Asset Management Rental Cooperative will rent out all or part of the time, that is where our Cooperative makes sense and makes it safer for all owners when participating in the rental program. First, we only advise you to buy equipment that we know has a proven track record of normally having good utilization rates and bringing maximum rental rates. Secondly, each owner is paid their net monthly rental proceeds based off of the total Cooperatives rental proceeds thus insuring that each owner is paid monthly for any monthly equipment happened to not rent at all that month.

4. How will I know where my equipment is located?

Answer: Each individual owner of equipment will be given a password to log into the Equipment Tracking system used by Equipment Zone, LLC. You will be able to see the location, daily usage, and the movements of each piece of equipment, along with other data about the equipment.

5. How does Equipment Zone, LLC rent out the equipment owned by the members of the Cooperative?

Answer: Equipment Zone, LLC has a Master Rental Agreement with a national equipment rental company enabling us to place all of our available rental locations.

6. What happens if a piece of my equipment is damaged or destroyed?

ANSWER: Each piece of equipment is insured not only through your individual insurance policy that we have helped you procure, but it is also insured by the parties renting the equipment for use. In the event that the equipment is damaged or destroyed and it is not covered by the renter for whatever reason, that is where your individual insurance would be covering the damage less your deductible.

7. What is the normal life of this type of rental equipment?

ANSWER: Since we specialize in mostly aerial equipment consisting of boom lifts, tele-handlers, and scissor lifts, we normally expect to rent the equipment out for 9-11 years before we remove it from the rental cooperative by either helping re-sell it for you, trade it in for new equipment, or have the equipment re-manufactured. Amount of usage and the condition of the equipment can be a factor in determining at what point does the equipment need to be sold or substituted for newer equipment.

8. Can I purchase my own equipment somewhere else and let you help me rent it out?

ANSWER: No. We only allow owners into the Asset Rental Management Cooperative that purchase the equipment through our strategic partnership to insure that all of the equipment meets the standards and expectations and warranty requirements to be placed into our rental markets.

9. What if I want to take my equipment out of the Asset Management Rental Program?

ANSWER: By giving us a 30 day written notice, you may remove your equipment from our rental program and do whatever you decide to do with it. If you choose to sell the equipment, we will assist you in the process of re-selling the equipment, as we have other possible prospective buyers of used equipment available.

10. Can I depreciate the equipment on my taxes?

EXHIBIT
5

10. Can I depreciate the equipment on my taxes?

ANSWER: Yes, there are different methods of depreciating the cost of the equipment allowed by the IRS, but you will need to consult your own CPA or legal advisor to determine which methods are best for you and your business.

11. What if I have other friends or business associates that would like to own an equipment rental business? Can I refer them to you?
ANSWER: Yes we are open to adding more rental equipment owners into the Equipment Zone Asset Management Rental Cooperative Program. In fact, from time to time, we offer our existing rental equipment owners a referral fee if they choose to recommend our services to other rental equipment owners.

12. Is this a "too good to be true" opportunity?
ANSWER: No. It is a real opportunity for those that choose to own an equipment rental business. Although we can not predict the future or know what may or may not happen in the economy, we can give you the historical results from the other equipment rental owners and what their expectations may be for the future. Do your due diligence and seek legal advice if needed.

13. Who do I call if I have any additional questions?
ANSWER: You may call either of the following persons during normal business hours if you have any questions or concerns regarding this business opportunity.

14. How do I track my machine?
ANSWER: Watch our step by step guide at the bottom of this page.

Brent McMinn - 573-225-2410
Dwight McMinn - 573-225-2412




## HOW TO TRACK YOUR MACHINE

02:12

---

## CONTACT US

### Drop us a line!

Name

Email*

Message

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

SEND

#### EZ Equipment Zone

RT. 5 Box 1975, Patton, MO 63662

(573) 225-2412
(573) 225-2410

#### Hours

Open today 09:00 am – 05:00 pm

Copyright © 2020 EZ Equipment Zone - All Rights Reserved.

Powered by GoDaddy Website Builder

# HOW TO TRACK YOUR MACHINE



EXHIBIT 6



EquipmentShare.com, Inc.
5710 Bull Run Drive, Columbia, MO 65201
Tel (573) 299-5222  Fax (877) 573-5205



## COMMERCIAL CREDIT APPLICATION

### Contact and Business Information

Customer ("Applicant") Name:

D.B.A / Trade Name:

Mailing Address:      City:      State:    ip:A

Physical Address:      City:      State:    ip:A

Telephone:      Fax:      Email:

☐ Corporation    ☐ Partnership    ☐ Federal/State/Local Government    ☐ Sole Proprietorship    ☐ Other: _____

Federal ID#: _____    Tax ID#: _____    Years in Business: _____

Dun & Bradstreet#: _____    Has this company, its owners, or officers ever filed for bankruptcy? ☐ Yes ☐ No

Previous Business Name (if any): _____

Tax Exempt? ☐ Yes ☐ No      If "Yes" include valid Tax Exempt Certificate.

Bonding Agent Name: _____    Phone: _____

Bonding Agent Address: _____

### Billing Information

Preferred method for invoicing: ☐ Mail [Default method]    ☐ Fax    ☐ Email

Accts Payable Contact:      Phone:      Email:

PO required? ☐ Yes ☐ No    Job Name/# required? ☐ Yes ☐ No    Monthly Statements required? ☐ Yes ☐ No

### Terms and Conditions

By applying herein for credit with EquipmentShare.com. Inc ("EquipmentShare"), Applicant agrees that this application is the property of EquipmentShare and expressly authorizes EquipmentShare to investigate Applicant's credit and financial information through any credit bureau or any other reasonable means including direct contact with past and present creditors. Applicant understands that EquipmentShare's payment terms are Net 30, unless otherwise agreed to in writing, and agrees to pay all invoices according to these terms. Applicant further understands that all past due accounts are subject to a 1.5% Finance Charge on all invoices 30 days or more past due, which is an annual percentage rate of 18% and agrees to pay such charges according to these terms along with all costs of collection, including reasonable attorney's fees incurred by EquipmentShare in collecting any past due balance. Applicant expressly consents to EquipmentShare protecting its lien rights including, but not limited to, by filing preliminary notices for work done in states where such notices are required. Applicant further agrees to be bound by EquipmentShare's standard form rental contract in use at the time of each rental transaction, the terms and conditions of which are incorporated into this Credit Application in their entirety, regardless of whether Applicant executes such rental contract.

### Authorized Signature
**Authorized Signature**: The individual completing this Application warrants that he/she is authorized to do so and agrees to the above terms and conditions on behalf of Applicant, and that the information provided in this Application is true and accurate.

Authorized Signer's Name (Print)*: _____    Signature: _____

Title: _____    Phone: _____    Email: _____

SSN: _____    Physical address: _____

**EXHIBIT**

**7**

1

## Guaranty

In consideration of the extension of credit to _____ ("Customer"), the undersigned guarantor(s) ("Undersigned") jointly, unconditionally and irrevocably guarantees to EquipmentShare the full and prompt payment, performance and satisfaction by Customer of each and every one of its obligations to EquipmentShare.com, Inc ("EquipmentShare"), whether now in existence or arising on or after the date of this Guaranty whether absolute or contingent, and whether secured or unsecured, together with all fees and charges of whatsoever kind and nature arising therefrom or relating thereto. The Undersigned further agrees to indemnify EquipmentShare and hold it harmless from any loss, cost or expense  (including, without limitation, reasonable attorney's fees and other costs of collection) arising from or as a result of any breach by Customer of its obligations to EquipmentShare or any breach by the Undersigned of Undersigned's obligations under this Guaranty.

The Undersigned hereby waives waives demand for payment under this Guaranty, protest, presentment, any applicable homestead exemption(s), notice  of  acceptance of  this  Guaranty, all  set-offs and counterclaims;  and  (e) all  other  notices customarily given and/or  to  which  the Undersigned would otherwise be entitled. It is expressly understand that EquipmentShare will not be required to exhaust it's legal remedies for recovery against Customer before seeking payment from the Undersigned and that the Undersigned is obligated, absolutely and immediately, to pay any amount owed to EquipmentShare by Customer and/or to perform any obligation due to EquipmentShare by Customer immediately upon Customer's failure to timely pay or perform. This is intended to be, and is, a continuing Guaranty applying to all transactions effected or to be effected, between EquipmentShare and Customer and shall not be revoked by the Undersigned except upon the receipt of written notice via certified mail with proof of delivery by EquipmentShare from the Undersigned, addressed to the attention of EquipmentShare's general counsel, to not enter into further agreements with Customer on the security of this Guaranty. Such revocation will only be effective with respect to any obligations by Customer arising after the date such writen revocation was received by EquipmentShare.

This Guaranty is governed by the laws of the State of Missouri, without regard to conflict of laws principles. The undersigned and EquipmentShare agree that any judicial proceeding to resolve claims relating to this Guaranty will be brought in the federal or state courts of Boone County, Missouri. Both the Undersigned and EquipmentShare consent to venue and personal jurisdiction in such courts. The . ndersigned further agrees and authorizes EquipmentShare to investigate Undersigned's credit and financial information through any credit bureau or any other reasonable means including direct contact with past and present creditors.The Undersigned has caused this Guaranty to be executed on the date set forth below.

Guarantor's Signature: _____     Guarantor's Name Printed: _____     Date: _____

SSN: _____     Physical Address: _____

Witness Signature: _____     Witness Name Printed: _____     Date: _____

## Insurance Information

Proof of insurance conforming to the coverage requirements set forth in EquipmentShare's standard rental agreement is required. You will be charged for a Rental Protection Plan ("RPP") if you do not provide proof of required property insurance coverage by the invoice due date.

Insurance Company: _____     Insurance Contact: _____

Contact Phone: _____     Contact Email: _____

## Trade References

Company, Contact, Email or Fax:

Company, Contact, Email or Fax

Company, Contact, Email or Fax

**EquipmentShare Use Only:**
Customer Approved for: ☐ Cash/COD          ☐ Net 30 Terms          ☐ Other Terms: _____

Credit Limit: _____          Notes: _____

Date: _____          Completed by: _____

# EZ EQUIPMENT ZONE

HOME      HOW THE PROCESS WORKS      HOW TO GET STARTED      FAQ      CONTACT US



## How The Process Work

1. After signing an Equipment Zone Asset Management Agreement, we will start the process by helping you set up a business entity in the event you don't already have a business platform to operate your Rental Business through.(you should consult a professional CPA or obtain legal advice if needed)
2. We will help you in the selection process of what types of rental equipment to purchase and help procure the best prices through our volume buying discounts.
3. We will assist you in placing UCC filings on each piece of equipment if needed.
4. We will assist you in procuring financing if needed on the rental equipment selected through our strategic financing partners.
5. We will assist you in adding  extended warranty policies to the equipment to help minimize potential expenses incurred after the normal manufacturer warranties expire.
6. We will assist you in placing replacement value insurance on each piece of equipment purchased through our volume discounts with our preferred insurance companies.
7. We will add your equipment into our Master Rental Program and be advertised as available for rent through our strategic rental agreement with a national equipment rental company and placed into specific markets to maximize the rental rates.
8. We will monitor each step of the individual piece of equipments rental process on a continual basis. We will be monitoring the location, amount of usage, expenses, warranty issues, and all other issues that have to do with the rental and maintenance of the equipment.
9. As we receive monthly compensation for the rental proceeds of all of the equipment listed in Equipment Zones Asset Management Cooperative, we will deduct all expenses such as equipment tracking device charges, normal maintenance charges, management fees, and any repair bills, etc. After the net rental proceeds for the tota lmonthly Asset Management Rental Cooperative is determined, we will pay you your net rental proceeds in accordance with our agreement, and based on your percentage of equipment cost versus the total equipment cost listed in the Cooperative. Generally this will be about the 20th of each month.
10. We will send each individual owner of equipment a yearlysummary of expenses they were charged for along with an IRS Form 1099 rental income total to

EXHIBIT

8

be used for tax and accounting purposes.

**HOW TO GET STARTED**

## PHOTO GALLERY



## CONTACT US

### Drop us a line!

Name

Email*

Message

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply.

SEND

We love our customers, so feel free to call during normal business hours.

## EZ Equipment Zone

RT. 5 Box 1975, Patton, MO 63662, US

(573) 225-2412
(573) 225-2410

## Hours

| | |
|---|---|
| **Mon** | **09:00 am – 05:00 pm** |
| Tue | 09:00 am – 05:00 pm |
| Wed | 09:00 am – 05:00 pm |
| Thu | 09:00 am – 05:00 pm |
| Fri | 09:00 am – 05:00 pm |
| Sat | Closed |
| Sun | Closed |

Copyright © 2020 EZ Equipment Zone - All Rights Reserved.

Powered by GoDaddy Website Builder

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ahern Rentals, Inc.

## DEFENDANTS

Equipmentshare.com Inc. and EZ Equipment Zone LLC

**(b)** County of Residence of First Listed Plaintiff    Nevada
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Delaware
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph M. Wientge, Jr., Littler Mendelson, P.C.
600 Washington Ave., Suite 900, St. Louis, MO 63101
(314) 659-2000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☒ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1   Original Proceeding
- ☐ 2   Removed from State Court
- ☐ 3   Remanded from Appellate Court
- ☐ 4   Reinstated or Reopened
- ☐ 5   Transferred from Another District *(specify)*
- ☐ 6   Multidistrict Litigation - Transfer
- ☐ 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1030; 18 U.S.C. § 1836(b)

Brief description of cause:
Computer fraud and abuse, theft of trade secrets, computer tampering, Missouri statutes and common law

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
over $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
11/02/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Joseph M. Wientge, Jr.

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Case Case 2:20-MDL-0N5629415ocDocumen Fileod 21 Filed 011/10/20: Page 65 of 70: Page ID #: 62

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

AHERN RENTALS, INC.                    )
                           ,           )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )     Case No.  4:20-cv-1565
EQUIPMENTSHARE.COM INC.                )
and EZ EQUIPMENT ZONE LLC ,            )
                                       )
            Defendant,                 )
                                       )

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY
WHEN INITIATING A NEW CASE.**

☐      THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS

PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER _____

AND ASSIGNED TO THE HONORABLE JUDGE _____.

☒      THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY

PREVIOUSLY FILED COMPLAINT.  THE RELATED CASE NUMBER IS <u>MDL No. 2945</u> AND

THAT CASE WAS ASSIGNED TO THE HONORABLE <u>Beth Phillips</u>.  THIS CASE MAY,

THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☐      NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT

COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE

MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: <u>11/02/2020</u>          <u>/s/ Joseph M. Wientge, Jr.</u>
                                        Signature of Filing Party

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

| | | |
|---|---|---|
| AHERN RENTALS, INC. | ) | |
| | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   4:20-cv-1565 |
| EQUIPMENTSHARE.COM INC. and EZ | ) | |
| EQUIPMENT ZONE LLC | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Equipmentshare.com Inc.
CT Corporation System
120 S Central Ave
Clayton, Missouri, 63105

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Joseph M. Wientge, Jr.
Lindsey Latzke
Littler Mendelson, P.C.
600 Washington Ave., Suite 900
St. Louis, MO 63101

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   4:20-cv-1565

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒  I returned the summons unexecuted because _____ ; or

❒  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                            *Server's signature*

                                     _____
                                            *Printed name and title*

                                     _____
                                            *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

|  |  |  |
|---|---|---|
| AHERN RENTALS, INC. | ) | |
| _____ | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   4:20-cv-1565 |
| EQUIPMENTSHARE.COM INC. and EZ | ) | |
| EQUIPMENT ZONE LLC | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   EZ Equipment Zone, LLC
Dwight McMinn
Rt 5 1975
Patton, MO 63662


A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Joseph M. Wientge, Jr.
Lindsey Latzke
Littler Mendelson, P.C.
600 Washington Ave., Suite 900
St. Louis, MO 63101


If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.


*CLERK OF COURT*


Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   4:20-cv-1565

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

.

My fees are $ _____ for travel and $ _____ for services, for a total of $       0.00       .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: