**BEFORE THE UNITED STATES JUDICIAL PANEL
ON
ON MULTI-DISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ) | |
| ) | **MDL No. 2945** |
| AHERN RENTALS, INC., ) | |
| TRADE SECRET LITIGATION ) | |
| ) | |

*This document relates to Opposed Action:*

***Ahern Rentals, Inc. v. Tom Schreiner,*** N.D. Cal., Case No. 3:20-cv-06750-RS

**RESPONSE TO MOTION TO VACATE CONDITIONAL TRANSFER ORDER - 2**

Defendant Tom Schreiner ("Schreiner") hereby submits his opposition to Ahern Rentals, Inc.'s ("Ahern") Motion to Vacate Conditional Transfer Order-2 (ECF No. 61) (the "CTO").

**I.    INTRODUCTION**

Ahern opposes the CTO for the sole reason that doing so will further its litigation strategy of filing multiple actions throughout the United States against EquipmentShare.com Inc ("EquipmentShare"), and its former employees, such as Schreiner, in an effort to drive EquipmentShare out of business.  Just as Ahern opposed the consolidation of its twelve (12) other actions into a single multidistrict litigation, so too does Ahern now seek to keep this action from being transferred to the MDL[1].  The reason is clear.  A transfer would streamline the process, be convenient for the parties and witnesses, and promote the just and efficient handling of this action – which is exactly what Ahern seeks to avoid.  Ahern has been clear that its goal is

---

[1] The MDL refers to the multidistrict litigation in the Western District of Missouri, entitled *In re: Ahern Rentals, Inc. Trade Secret Litigation*, MDL Case No. 20-02945-MD-C-BPO (the "MDL Action"), pending before the Honorable Beth Phillips.

to make it as costly as possible for its former employees and EquipmentShare to defend against Ahern's claims in separate forums throughout the United States.

## II.    PROCEDURAL BACKGROUND

On September 17, 2020, Ahern filed this action in the Superior Court of California for the County of Contra Costa, entitled *Ahern Rentals, Inv. v. Tom Schreiner* (referred to as "*Schreiner Action*"). (ECF No. 1, ¶¶ 9-10; Complaint, ¶¶ 1-2.) On September 28, 2020, eleven (11) days after Ahern filed the *Schreiner Action*, but before Ahern served Schreiner, Schreiner removed the action under 28 U.S.C. § 1441(b)(2) to the United States District Court, Northern District of California, Case No. 20-cv-06750-RS. (ECF No. 1, ¶ 7.)

On October 29, 2020, Ahern filed a Motion to Remand (ECF No. 10). On November 12, 2020, Schreiner filed his Opposition (ECF No. 12), and Ahern filed its Reply on November 19, 2020 (ECF No. 14). The hearing was originally set for December 10, 2020, but, on the Court's own motion, was continued to February 4, 2021.

On October 26, 2020, Defendants Matthew Allen and Derrick Torres filed a Notice of Potential Tag-Along Action in the MDL Action to notify the Judicial Panel on Multidistrict Litigation ("JPML") of the *Schreiner Action*. (ECF No. 60.) Allen and Torres are represented by Ferber Law, P.C., who is also counsel for Schreiner. On October 29, 2020, JPML issued its CTO to transfer the *Schreiner Action* to the MDL. (ECF No. 61.) Ahern now seeks to oppose the CTO.

## III.   ARGUMENT

### A.    The Motion To Remand Is Not A Basis To Vacate The CTO.

Ahern argues that the Motion to Remand provides a basis to vacate the CTO. However, Ahern has not, and cannot, cite to a single case in which the JPML vacated a conditional transfer

order on the basis that a motion to remand was pending before the district court. This is not surprising, however, because MDL courts are given broad authority to administer proceedings as a whole, including the authority to issue rulings on motions to remand. *See Allen v. McKesson Corp.*, No. C 13-03110 JSW, 2013 WL 3948865, at *2 (N.D. Cal. July 30, 2013); *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). Indeed, deference to the MDL court for resolution of a motion to remand is actually preferred because it provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system. *See Rivers v. Walt Disney Co.,* 980 F. Supp. 1358, 1360–61 (C.D.Cal.1997) (staying action pending transfer decision by JPMDL after finding that judicial resources would be conserved and defendant would not be prejudiced).

The MDL process seeks to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact [that] are pending in different districts" by permitting their transfer to a single district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a). To promote efficiency in a context involving the juggling of dozens or thousands of independent cases, a "district court needs to have broad discretion to administer the proceeding as a whole." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1232 (9th Cir.2006) (hereinafter "*In re PPA*"). A district judge exercising authority over cases transferred for pretrial proceedings "inherits the entire pretrial jurisdiction that the transferor district judge would have exercised if the transfer had not occurred." 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3866 (3d ed. 2010). Such authority is broad and encompasses the power to decide dispositive pretrial motions. *In re PPA*, 460 F.3d at 1231 (stating that a transferee judge's power "includes authority to decide all pretrial motions such as motions to dismiss, motions for summary

judgment, motions for involuntary dismissal under Rule 41(b), motions to strike an affirmative defense, and motions for judgment pursuant to a settlement"); *see also In re Patenaude*, 210 F.3d 135, 144 (3d Cir. 2000). Encompassed within such authority is also the power to decide motions to remand. *See Allen*, No. C 13-03110 JSW, 2013 WL 3948865, at *2; *Rivers*, 980 F. Supp. at 1362.

As the Ninth Circuit stated in *In re Korean Airlines Co., Ltd.*, 642 F.3d 685 (9th Cir. 2011):

> We confirm the general rule that, in multidistrict litigation, a transferee judge can handle all types of pretrial matters that otherwise would have been handled by the transferor court. A corollary to this principle is that the MDL transferee court is generally bound by the same substantive legal standards, if not always the same interpretation of them, as would have applied in the transferor court.

*In re Korean Airlines Co., Ltd.*, 642 F.3d at 698.

In an attempt to ignore the MDL's authority to decide Ahern's Motion to Remand, Ahern argues that the Motion to Remand will deprive the federal court of jurisdiction, and therefore, the CTO should be vacated because the MDL will not have jurisdiction over the *Schreiner Action*. This argument is premature and puts the cart before the horse. As mentioned above, the hearing on the Motion to Remand is not until February 4, 2021. As a result, the federal court *does* have subject matter jurisdiction over the *Schreiner Action* and, therefore, the authority to transfer it to the MDL. Moreover, the JPML is not required to first resolve any basic jurisdictional issues that would allow it the opportunity to transfer this action to a more proper forum. *Rivers*, 980 F. Supp. at 1362.

Having the MDL hear the Motion to Remand is the most efficient and expeditious course of action. For instance, if the CTO is vacated and the district court denies the Motion to Remand, Schreiner will be forced to file another Notice of Tag-Along in order to transfer it to the

MDL and the parties will be back to square one. Conversely, if the Motion to Remand is heard by the MDL, this can be avoided altogether, thereby saving significant time and costs, and conserving judicial resources.

This is in line with the majority of courts who have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the JPMDL because of the judicial resources that are conserved. *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997); *See also American Seafood,* 1992 WL 102762, at *6 (citing *Arthur–Magna, Inc. v. Del–Val Fin. Corp.,* 1991 WL 13725 (D.N.J. 1991)); *Portnoy v. Zenith Laboratories,* 1987 WL 10236, at *1 (D.D.C. 1987). This is also consistent with giving deference to the MDL court for resolution of a motion to remand. *See Rivers,* 980 F. Supp. at 1360–61.

Ahern argues that precedent exists for the JPML to vacate a conditional transfer where a motion to remand is pending, citing *In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, No. 2226, 2014 BL 42525 (J.P.M.L. Feb. 14, 2014) ("*Darvocet*"). Ahern misinterprets *Darvocet*. In *Darvocet*, the parties reached an agreement as to the conditional transfer order, and based on that agreement, the court found that the transfer would not promote the just and efficient conduct of the litigation. Specifically, the court stated:

> After considering all argument of counsel, we find this action involves common questions of fact with the actions previously transferred to MDL No. 2226, but the agreement of the parties leads us to conclude that transfer under these particular circumstances would not promote the just and efficient conduct of this litigation.

The decision to vacate the conditional transfer order was not based on a pending motion to remand[2]. In fact, the court did not even address plaintiff's argument that a motion to remand

---

[2] In *Darvocet*, the plaintiff moved to vacate the conditional transfer order on the grounds that: (1) removal to federal court was improper, (2) a motion to remand was pending, and (3) transfer would not promote the just and efficient conduct of the action because there were only a small

could support a decision to vacate the conditional transfer order, and Ahern does not cite any other case that supports such an argument.

Ahern's argument that a transfer will delay a ruling on the Motion to Dismiss is equally unavailing. The Motion to Remand has been fully briefed and can be easily decided in the MDL. Judge Phillips, who has been assigned to the MDL, has issued decisions on multiple motions that were pending in the district courts before they were transferred to the MDL. These include motions for preliminary injunctions and motions to dismiss. There is no reason to believe that Judge Phillips will delay a ruling on Ahern's Motion to Remand.

B.     **The Removal To Federal Court Was Proper.**

The sole basis for Ahern's Motion to Remand is that removal to federal court was improper because 28 U.S.C. § 1441(b)(2) only permits pre-service removal in cases involving *multiple* defendants, not cases involving a single defendant, such as Schreiner[3]. As explained more fully in Schreiner's opposition, Ahern is wrong on several levels.

Section 1441(b)(2) applies *only* to parties "properly joined **and served**." (Emphasis added.) Because Ahern had not yet served Schreiner at the time of removal, Section 1441(b)(2) does not apply. This conclusion is supported by the few cases that have addressed this issue, all of which have rejected Ahern's argument. In *Encompass Insurance Company v. Stone Mansion Restaurant, Inc.*, 902 F. 3d 147, 152-54 (3d Cir. 2018), the Third Circuit held that under the "plain meaning" of Section 1441(b)(2), an unserved in-state defendant may remove a case on the basis of diversity jurisdiction. *Encompass*, 902 F. 3d at 152-54. The Third Circuit applied the

---

number of actions remaining in the MDL. The court, however, did not address the first two grounds upon which the motion was based.

[3] Ahern does not dispute that if removal was proper, the Federal Court has subject matter jurisdiction based on diversity of citizenship.

plain meaning of Section 1441(b)(2) and held that *a single, in-state defendant who had yet to be served could remove a case to federal court. Id*. at 152-154.  The Second Circuit reached the same conclusion – namely, that "[b]y its text, . . . Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."  *Gibbons v. Bristol-Myers Squibb Co.*, 919 F. 3d 699, 705 (2d Cir. 2019).

Most recently, in April 2020, the Fifth Circuit explicitly adopted the Second Circuit's holding.  *Texas Brine Co., LLC v. Am. Arbitration Ass'n, Inc.*, 955 F. 3d 482, 486 (5th Cir. 2020) ["We agree with a comment made by the Second Circuit: 'By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."] (quoting *Gibbons*, 919 F. 3d at 705)).  The Sixth Circuit in a footnote has also interpreted Section 1441(b)(2) to mean that where there is complete diversity of citizenship, "the inclusion of an *unserved* resident defendant in the action does not defeat removal under 28 U.S.C. 1441(b)."  *McCall v. Scott*, 239 F. 3d 808, 813 n.2 (6th Cir. 2001).

The Northern District of California, where the *Schreiner Action* is currently pending, is in alignment with the decisions of the Second, Third, Fifth, and Sixth Circuits. "[T]he Northern District of California has consistently held a defendant may remove an action prior to receiving proper service, even when the defendant resides in the state in which the plaintiff filed the state claim."  *Loewen v. McDonnell*, 2019 U.S. Dist. LEXIS 94613, *17 (N.D. Cal. June 5, 2019).  This was most recently reaffirmed by the Honorable Lucy Koh in *Global Indus. Inv. Ltd. v.*

*Chung*, 2020 U.S. Dist. LEXIS 76787, *6 (N.D. Cal. April 28, 2020) [Section 1441(b)(2)'s plain language bars removal only if the defendant was properly joined *and* served.]

Finally, the case upon which Ahern almost exclusively relies, *Tourigny v. Symantec Corp.,* 110 F. Supp. 3d 961 (N.D. Cal. 2015), was rejected by the Third Circuit. *Tourigny* relies on the opinion in *Allen v. GlaxoSmithKline PLC*, 2008 U.S. Dist. LEXIS 424491 (E.D. Pa. May 30, 2008), which was overruled in *Encompass*. Consequently, the only case upon which Ahern relies in its Motion to Remand is no longer good law.

**C.    A Transfer To The MDL Will Serve The Purpose Of 28 U.S.C. § 1407.**

The "basic purpose" of multidistrict litigation is to secure the "just, speedy and inexpensive determination of every action." *In re National Student Marketing Litigation*, 368 F. Supp. 1311, 1316 (J.P.M.L. 1972). Transfer of actions is appropriate under 28 U.S.C. Section 1407 when: (1) the actions "involv[e] one or more common questions of fact;" (2) the transfer would "be for the convenience of parties and witnesses;" and (3) the transfer "will promote the just and efficient conduct" of the actions. All of those requirements are met here.

1.    The *Schreiner Action* involves the same common questions of fact.

Ahern attempts to obfuscate the obvious similarities and overlapping factual issues in the *Schreiner Action* and the actions in the MDL Action by arguing that the allegations against Schreiner are specific to him and that EquipmentShare is not named as a defendant. This same argument has already been considered, and rejected, by the JPMDL. As explained by the JPMDL:

> Opposing parties have argued, inter alia, that Section 1407 transfer should be denied because i) the actions present unique issues relating to infringement and damages; ii) the actions are at different stages of pretrial proceedings; iii) given the limited number of actions in this docket, it would be preferable to address any common matters through alternatives to Section 1407 transfer; and/or iv) transfer would be unduly burdensome. We are not persuaded by these

contentions. *We point out that transfer under Section 1407 does not require a complete identity or even majority of common factual issues as a prerequisite to transfer*.

While we applaud voluntary efforts to cooperate and coordinate among parties, counsel, and courts, we observe that transfer under Section 1407 has the benefit of placing all actions in this docket before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs while ensuring that common parties and witnesses are not subjected to discovery demands which duplicate activity that has already occurred or is occurring in other actions.

Moreover, transfer under Section 1407 has the additional streamlining effect of fostering a pretrial program that: i) *allows discovery with respect to any non-common issues to proceed concurrently with remaining discovery on common issues*, *In re Joseph F. Smith Patent Litigation*, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and ii) ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties.

*Handspring, Inc. v. MLR, LLC*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. July 1, 2003).

More importantly, Ahern's argument has already been rejected by this Panel. In opposing EquipmentShare's Motion for Transfer (ECF No. 36), Ahern argued that consolidation was improper because each of its cases were against individual employees, who were located in various locations throughout the United States, and that its allegations were unique and specific to those employees. In rejecting this argument, this Panel stated:

In opposing centralization, plaintiff argues that the allegations and discovery in these actions are focused on the individual defendants and their alleged misconduct, which plaintiff claims is "highly localized." Plaintiff alleges that the individual defendants, all of whom are former Ahern employees now employed by EquipmentShare,[3] assisted EquipmentShare in its scheme by taking actions such as soliciting Ahern employees and customers and taking Ahern confidential and proprietary information and trade secrets while still employed by Ahern. While plaintiff alleges misconduct unique to each individual defendant, EquipmentShare is alleged to have engaged in a "nationwide conspiracy" to encourage and abet such conduct by Ahern employees. According to Ahern, EquipmentShare intends to ruin Ahern's business nationwide and steal its market share. These allegations are most fully set forth in the complaint in one District of Nevada action (the *RICO* action), which names only EquipmentShare and asserts a nationwide conspiracy in violation of federal racketeering and antitrust statutes,

9

among other claims. The *RICO* complaint includes as evidence of this conspiracy many of the allegations made against the individual defendants in more than half of the actions also before the Panel. Overlapping discovery between at least these actions and the *RICO* action therefore is likely. And indeed, defendants assert that Ahern has served overlapping discovery requests and deposition notices already.

(Transfer Order, p. 1-2.)  (ECF No. 53.)

Additionally, Ahern is incorrect that this case involves allegations that are unique to Schreiner.  In its Transfer Order consolidating the actions, the JPMDL found:

> These actions share factual questions arising from allegations of a nationwide scheme by EquipmentShare to capture market share in the equipment rental business from Ahern by (1) *luring away its employees and customers*, and (2) *using Ahern's confidential and proprietary information and trade secrets*. Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.

(CTO, p. 1 (emphasis added).)  (ECF No. 53.)

The JPMDL further distilled the factual allegations as follows:

> Plaintiff alleges that the individual defendants, all of whom are former Ahern employees now employed by EquipmentShare, *assisted EquipmentShare in its scheme* by taking actions such as *soliciting Ahern employees and customers* and *taking Ahern confidential and proprietary information and trade secrets* while still employed by Ahern.

(Transfer Order, pp. 1-2 (emphasis added).)

The *Schreiner Action* falls squarely within this description annunciated by the JPMDL. Ahern alleges that Schreiner is a former employee of Ahern, who now works at EquipmentShare, and who took Ahern's confidential, proprietary, and/or trade secret information before leaving Ahern so that he could use it after he joined EquipmentShare in order to solicit Ahern's customers. (*Schreiner* Complaint, ¶¶ 22-27.)  Specifically, as in the other actions in the MDL, Ahern alleges:

> Ahern is informed and believes and on that basis alleges that, *in preparation for his move from Ahern to EquipmentShare*, *Defendant Schreiner, unlawfully retained Ahern's confidential, proprietary, and trade secret information* in

10

violation of his Agreement so that he could **use the information in his new employment with EquipmentShare**.

(*Schreiner* Complaint, ¶ 24 (emphasis added).)

The Complaint further alleges that "Ahern is informed and believes and thereon alleges that Defendant Schreiner unlawfully retained and used Ahern's confidential, proprietary, and/or trade secret information ***to solicit Ahern's clients*** following his quitting employment with Ahern and ***joining EquipmentShare*** and his doing so caused Ahern's losses." (*Id*. at ¶ 26.) (emphasis added.)

These allegations track the allegations in the actions already transferred to the MDL. By way of illustration, Ahern alleges in the *Allen/Torres Action*:

> Plaintiff is informed and believes, and on that basis alleges, that Allen and Torres, in furtherance of their conspiracy with ES [EquipmentShare], ***wrongfully took and disclosed Ahern Confidential Information*** to ES, and that Defendants are now ***wrongfully using Ahern Confidential Information in their solicitations of Ahern's customers*** to cease doing business with Ahern and/or to do business with ES.

(*Allen/Torres* Complaint, ¶ 39 (emphasis added).)

These same allegations are also contained in the *McCormac Action* (*McCormac* Complaint, ¶ 24) and in the *Maestretti Action* (*Maestretti* Complaint, ¶¶ 20 and 23). Given the many common issues of fact that the *Schreiner Action* and MDL present, any minimal variations between them based on the claims involving the individual defendants create no barrier to transfer. *See In re Dippin' Dots*, 2000 U.S. LEXIS 18340, at *2 (J.P.M.L. Dec. 14, 2000) (the presence of individual questions of fact will not serve as a basis to deny a Section 1407 transfer); *see also In re Vonage Mktg. & Sales Practices Litig.*, 505 F. Supp. 2d 1375, 1377 (J.P.M.L. 2007) (same).

Notably, other than making the blanket statement that the allegations in the *Schreiner Action* are unique to him, Ahern does not even attempt to explain why or how the allegations in

11

the *Schreiner Action* differ from the other actions in the MDL. Nor can it. As explained above, the allegations are virtually identical.

The fact that Ahern did not name EquipmentShare as a defendant in the *Schreiner Action* is also irrelevant and amounts to nothing more than a distinction without a difference. In fact, it is important to note that the *Kollar Action*[4], which does not name EquipmentShare as a defendant, was transferred to the MDL without objection from Ahern. Thus, by Ahern's own conduct in not objecting to the transfer of the *Kollar Action*, in which Ahern did not name EquipmentShare as a defendant, Ahern implicitly concedes that its argument lacks merit.

Further, if past practice is any indication, it will only be a matter of time before Ahern names EquipmentShare in the *Schreiner Action*, just as it recently did in the *Davis Action*[5]. In the *Davis Action*, for instance, Ahern's initial complaint (like here) alleged that individuals left Ahern and joined EquipmentShare as part of "EquipmentShare's scheme." (See, Schreiner's Request for Judicial Notice ("RJN"), Exhibit A). Ahern's factual allegations supporting the alleged misconduct in the *Davis Action* are virtually identical to those in the *Schreiner Action* and each case in the MDL. Despite this, Ahern's original complaint in the *Davis Action* only named the EquipmentShare employees as defendants. Once Ahern served the individual defendants, however, Ahern promptly filed an amended complaint to name EquipmentShare. (RJN, Exhibit B.) This was done solely to avoid removal and consolidation with the MDL[6].

---

[4] The *Kollar Action* is entitled *Ahern Rentals, Inc. v. James E. Kollar*, and was filed in the Eastern District of Texas, Case No. 10-0150. On November 24, 2020, the JPMDL issued Conditional Transfer Order-4 to transfer the *Kollar Action* to the MDL. (ECF No. 87.) Ahern did not oppose the transfer.

[5] The *Davis Action* was filed in the District Court of Harris County, Texas, Cause No. 202028396.

[6] Although Ahern was able to avoid removal and consolidation in the *Davis Action*, the Texas state court ordered the parties to coordinate their discovery with the MDL and adopted the MDL's Discovery Coordination Order because it involves the same common questions of fact

Ahern is now employing the same strategy in the *Schreiner Action* and is only delaying adding EquipmentShare in order to avoid removal and consolidation in the MDL by EquipmentShare. Despite Ahern's new litigation strategy, and as stated above, the transfer statute does not require complete unity of parties. Transfer is appropriate where, as here, the cases involve "a nationwide scheme by EquipmentShare to capture market share . . from Ahern by (1) luring away is employees and customers, and (2) using Ahern's confidential and proprietary information and trade secrets." (Transfer Order, p. 1.) This is true irrespective of whether EquipmentShare is a named defendant.

      2.      <u>A transfer will not result in any delays and is convenient for the parties</u>.

Ahern argues that if this case is transferred, it will cause a delay and that "it will languish in the MDL for a matter of months, if not years, before it is finally determined that this case belongs in California state court." There is no validity to this argument. As previously mentioned, in the short time frame that this action was transferred to Judge Phillips, Judge Phillips has issued rulings on several motions, including motions for preliminary injunctions and motions to dismiss, and issued numerous pre-trial orders governing the parties and discovery. Contrary to Ahern's belief, Judge Phillips has demonstrated an ability to move this case along quickly and issue decisions in an extremely timely manner. Thus, there is nothing to support Ahern's argument that "given the current status of this action and the relatively advanced status of the MDL cases, there is a high likelihood that the court may not immediately rule on the motion to remand."

---

and discovery. (RJN, <u>Exhibits C and D</u>.) In doing so, the Texas state court recognized that this is all part of the same litigation.

3.  A transfer will promote the just and efficient conduct of the *Schreiner Action*.

Ahern argues that a transfer will not promote judicial efficiency because the *Schreiner Action* is at a completely different stage than the other cases in the MDL. Ahern is making a mountain out of a molehill. Discovery in the MDL only recently opened on November 1, 2020, and the MDL has wide discretion to structure discovery in this case so that it is the most convenient and efficient for all parties. *In re Grain Shipments*, 319 F. Supp. 533, 535-536 (J.P.M.L. 1970). Moreover, Ahern's counsel has been involved in every single aspect of the MDL, so Ahern cannot legitimately argue that it is somehow prejudiced if this case is transferred.

It is axiomatic that when a new case is filed and transferred to an existing MDL, the new case will have a different procedural posture. Despite any procedural differences, however, all parties benefit when a case is transferred to a single district for coordinated or consolidated pretrial proceedings. *See In re Grain Shipments*, 319 F. Supp. 533, 535-536 (J.P.M.L. 1970). For example, if this case is not transferred, duplicity of discovery will almost certainly occur. Similar to Schreiner, all of the individual defendants in the MDL Action were employed by Ahern as sales representatives and/or branch managers. They also had the same access to Ahern's alleged confidential/trade secret information relating to customers. As a result, it is certain that the parties will seek many of the same documents, serve many of the same interrogatories and requests for admission, and notice depositions of the same witnesses in the *Schreiner Action* and MDL. Additionally, Ahern will likely rely on the same documents in the *Schreiner Action* as it will in the MDL. Moreover, no depositions have taken place, so Ahern will have every opportunity to fully participate in discovery in the MDL.

Transferring this action to the MDL will also ensure that discovery disputes can be decided by one judge in order to avoid inconsistent rulings. Having one judge will also avoid conflicts in rulings on other pretrial motions, such as motions for preliminary injunction. Moreover, this court has already held that tag-along actions favor transfer, as it would lead to the "just and expeditious resolution of all actions to the overall benefit of the parties and the courts." The *Schreiner Action* is the perfect example of why a transfer is appropriate, as it will ensure the just and efficient conduct of Ahern's actions and provide a ready forum for this case. *See In re Metropropol*, 329 F. Supp. 2d at 1370.

Because of the similarities between the *Schreiner Action* and the other cases in the MDL, it is only reasonable that one judge should "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that the common party and witnesses are not subjected to discovery demands that duplicate activity that will or has occurred in other actions." *In re M3Power Razor Sys. Mktg. & Sales Practices Litig.*, 398 S.Supp.2d 1363, 1364-1365 (J.P.M.L. 2005).

### D.     Any Delays Have Been Caused By Ahern's Own Conduct.

Ahern argues that this case will be delayed if the CTO is not vacated. To the contrary, it is Ahern who is further delaying this matter by opposing the CTO and filing a Motion to Remand. In short, Ahern is manufacturing a delay by filing a Motion to Remand and objecting to the CTO, and then using the delay that Ahern itself caused as a basis to vacate the CTO.

Any notion that a transfer will cause a delay is also nonsensical. Almost immediately after removing the action to Federal Court, Schreiner filed his Notice of Tag-Along to transfer it to the MDL, where discovery recently commenced and the parties have coordinated their efforts. By opposing this transfer, it is Ahern who will be delaying the action.

Furthermore, if this case is transferred, discovery can commence immediately. As such, it will actually avoid the delays that Ahern claims will result from a transfer. In fact, it will have the effect of speeding the case up and bringing it along more quickly than if it remained in the district court. Transfer of the *Schreiner Action* will therefore serve to expediate and streamline the case, not delay it.

## IV. CONCLUSION

Ahern fails to demonstrate that good cause exists to vacate the CTO. As more fully set forth above, a transfer to the MDL will streamline the process, be more convenient for the parties and result in the just and effective use of judicial resources and the parties' time and efforts. Therefore, Schreiner respectfully requests the Court deny Ahern's Motion to Vacate the CTO.

Dated: December 10, 2020　　　　　　　　FERBER LAW, P.C.

　　　　　　　　　　　　　　　　　　　　By: ___*/s/ Connor M. Day*___
　　　　　　　　　　　　　　　　　　　　　　Connor M. Day (CA Bar No. 233245)
　　　　　　　　　　　　　　　　　　　　　　cday@ferberlaw.com
　　　　　　　　　　　　　　　　　　　　　　2603 Camino Ramon, Suite 385
　　　　　　　　　　　　　　　　　　　　　　San Ramon, California 94583
　　　　　　　　　　　　　　　　　　　　　　Telephone: (925) 355-9800
　　　　　　　　　　　　　　　　　　　　　　Facsimile: (925) 263-1676

　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　　Tom Schreiner